# FRED BROWN *v.* STATE OF INDIANA.

[No. 270S19. Filed June 22, 1971.]

*J. Conrad Maugans, Bayliff, Harrigan, Cord & Maugans,* of Kokomo, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction in a trial by jury in the Howard Circuit Court for armed robbery in violation of I.C. 1971, 35-12-1-1, being Burns § 10-4709. Appellant was sentenced to twelve years in prison.

Appellant's first contention is that the trial court erred in admitting in evidence certain items of real evidence and appellant's oral pre-trial statement to the police because the evidence was obtained in violation of appellant's privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution and Art. 1, § 14 of the Indiana Constitution.

Appellant was arrested around 10:00 A.M. on August 16, 1968, in Kokomo for the robbery of a service station six hours earlier in Kokomo. Deputy Sheriff Ferguson testified that he took appellant to the jail and prior to any interrogation he read appellant an advisement of his rights from a standard form then in use in Howard County. Appellant refused to sign the waiver of rights form stating that he did not want to sign anything until he had a chance to talk to an attorney. Deputy Ferguson testified that thereupon the conversation ended and that appellant was not questioned about the robbery. Fergu-

son did not advise the appellant he was suspected of armed robbery. Deputy Sheriff Ferguson testified he returned to the scene of the arrest and with Deputy Hawks searched appellant's apartment and car. The results of that search are not an issue on this appeal.

Deputy Hawks testified that he arrived at the scene of arrest after appellant had been taken to jail. Ferguson returned to the scene and he and Hawks searched the appellant's car and apartment. Hawks returned to the jail and assisted Ferguson in getting a statement from the victim, the service station attendant. Hawks saw appellant but had no contact with him at that time. Hawks testified that he first contacted appellant at the jail at 6:00 P.M. on August 16. Appellant cursed Hawks and Hawks started to leave but appellant called him back. Hawks then took appellant to an interrogation room and prior to any questioning he read appellant the same rights form that Ferguson said he used. Again appellant refused to sign the waiver of rights form. Hawks' testimony is not clear whether appellant at that time stated that he would not sign anything until he talked to an attorney or whether appellant said that after confessing. In any case, Hawks continued to talk to appellant for one and one-half hours. Hawks first talked to appellant, a Negro, about racial problems in the service and other general topics. Hawks said the purpose of this general conversation was "to open appellant up" concerning the robbery. Appellant requested permission to call his father in Iowa which Hawks permitted. Hawks thought the father advised appellant not to admit anything to Hawks. After the phone call Hawks shcwed appellant the victim's statement about the robbery. Hawks testified that then the appellant said the victim of the robbery had had a gun. Hawks told appellant he was not concerned about the stolen money or the gun appellant had but was concerned about the victim's gun. Finally appellant agreed to accompany Hawks to appellant's car and give Hawks the money and guns, which were hidden behind the radio speaker grille. On the way Hawks said appellant admit-

ted the robbery. It was the oral incriminating statement to Hawks, and the fruits thereof, that appellant sought to have excluded from evidence.

Appellant had an absolute right to remain silent and to have an appointed attorney present during any interrogation by the police. *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. There the United States Supreme Court said:

> "Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right to silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U. S. at 444.

For purposes of this appeal we assume that the advisement of rights was adequate and the sole issue is whether appellant voluntarily and knowingly waived those rights.

According to police testimony appellant was advised of his rights on two different occasions by two different officers and both times appellant refused to sign a waiver of his rights. Since the advisement of rights and the waiver were read to appellant at the same time we must presume that if appellant understood what his rights were he also understood the meaning of a waiver of those rights. Therefore appellant's refusal to sign the waiver of rights form was an explicit, voluntary and knowing *refusal* to waive his rights.

Appellee argues that although appellant at first refused to waive his rights, the fact that he later confessed was an implicit waiver of those rights. A heavy burden rested on the appellee at trial to show a voluntary and knowing waiver by appellant. *Miranda, supra.* There the court said:

> "If an interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the Government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U. S. at 475.

We hold that the appellee did not carry this burden. After appellant's explicit refusal to waive his right to have an attorney present and to remain silent appellant should not have been questioned any further. *Mims* v. *State* (1970), 255 Ind. 37, 262 N. E. 2d 638; *Miranda, supra.* In *Miranda, supra,* the court said:

> "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. *If however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.* Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.
>
> *       *       *
>
> "*If the individual states that he wants an attorney, the interrogation must cease until an attorney is present.* At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." (Emphasis added.) 384 U. S. at 445, 474.

It is clear that appellant indicated his desire to talk to an attorney before waiving his rights. Deputy Ferguson testified that appellant refused to sign a waiver of rights because he did not want to sign anything until he had had a chance to talk to an attorney. Appellant also explicitly refused to sign a waiver of rights for Deputy Hawks and the evidence is compelling that Hawks knew that appellant's reason for refusing was that he wanted to consult with an attorney before he signed anything. It is true that Hawks at one place testified that it was only after he had already confessed to Hawks that appellant said he wanted an attorney before signing anything. However, at the hearing on appellant's motion to suppress Hawks was asked if appellant gave an explanation for refusing to sign a waiver of rights and Hawks said:

"A.  Yes, he said, once the court appointed him an attorney in all probability he would sign a statement."

Surely, appellant's explanation for refusing to sign a waiver occurred at the time appellant was asked to sign the waiver form which, by Hawks own testimony, occurred prior to any questioning. Regardless of what appellant told Hawks it is reasonable to infer that Hawks was told by Ferguson that appellant refused to sign a waiver of rights until he had consulted an attorney. Both Hawks and Ferguson testified that they could not recall whether Ferguson had told Hawks that appellant did not want to waive his rights until he had seen an attorney, however, they were working together on the same case and after the arrest they jointly searched appellant's car and apartment and then returned to jail and jointly obtained a statement from the victim. It is inconceivable that they did not discuss Ferguson's attempted interrogation of appellant and they did not deny doing so.

In spite of knowing that appellant did not want to waive his rights to remain silent and to have an attorney present, Hawks continued to question appellant for one and one-half hours until he got a confession. Hawks conversed with appel-

lant about racial problems in order in Hawks' words to "open him up" as to the robbery. Hawks permitted appellant to call his father in Iowa and thought the father told appellant not to tell him anything. Then Hawks showed appellant the victim's statement concerning the robbery. Appellant mentioned that the victim had a gun and that was omitted from the statement. Hawks told appellant that he did not really care where the money was or his gun, but was only interested in the victim's gun.

A confession obtained under these circumstances does not constitute an implied waiver by appellant of his rights. In *Miranda* the court said:

> "An *express statement* that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or *simply from the fact that a confession was in fact eventually obtained.*

> \* \* \*

> "Whatever the testimony of the authorities as to waiver of rights by an accused, the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights. In these circumstances the fact that the individual eventually made a statement is consistent with the conclusion that the compelling influence of the interrogation finally forced him to do so. It is inconsistent with any notion of a voluntary relinquishment of the privilege. Moreover, any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege. The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation." (Emphasis added.) 384 U. S. at 475-476.

See also *Mims* v. *State, supra.*

Our holding here is supported by *U. S.* v. *Nielsen,* 392 F. 2d 849 (7th Cir. 1968). The court described the crucial events as follows:

"According to the testimony of the F.B.I. agent, the defendant, after being warned of his right to remain silent and the consequences of speaking, said he had a retained attorney and would not sign a waiver of rights form or 'anything' until he talked to his attorney. At this point, the agent asked the defendant if he wanted to call his attorney. The defendant replied that he would wait to call until later in the morning but that 'they' could continue questioning him. Resumption of questioning by the agent resulted in the defendant responding to give questions in the negative." 392 F. 2d at 852.

In holding that the defendant's answers were not admissible in evidence the court said:

"Here the defendant's refusal to sign the waiver form, followed by an apparent willingness to allow further questioning, should have alerted the agents that he was assuming seemingly contradictory positions with respect to his submission to interrogation. Instead of accepting the defendant's equivocal invitation, the agents should have inquired further of him before continuing the questioning to determine whether his apparent change of position was the product of intelligence and understanding or of ignorance and confusion. However, no further inquiry took place. In the absence of such an inquiry, we are compelled to conclude that the defendant's negative responses to the questions asked him were not made after a knowing and intelligent waiver of his rights." 392 F. 2d at 853.

The same court in *Jenkins* v. *U. S.* (7th Cir., 1971), reached the same conclusion in a similar case.

We hold that the appellee did not carry its burden of showing that appellant made a voluntary and knowing waiver of his rights to remain silent and to have an attorney present during interrogation.

Judgment reversed and remanded for new trial.

Givan, Hunter and Prentice, JJ., concur; Arterburn, C.J., dissents with opinion.

### DISSENTING OPINION

ARTERBURN, C.J.—I dissent for the reason that the majority opinion appears to leave the inference that a waiver by a

prisoner of the constitutional right not to be compelled to incriminate himself must be executed in writing. In my opinion that is not the law. Likewise, a refusal to sign a waiver of such constitutional right does not mean a prisoner may not change his mind thereafter and agree to talk. In my opinion that is the very question here. This prisoner was fully and adequately informed of his constitutional right to talk or not to talk as well as the right to consult with an attorney before talking. We have said a number of times that a person in custody may waive the right to have an attorney before talking and that he may talk any time he pleases. This prisoner was fully informed of his rights and chose to talk. There is no evidence that he was forced to talk or was coerced into doing so.

The majority opinion appears to take the position that once a refusal to talk is made it is practically impossible for the prisoner to waive his rights or change his mind. With this I cannot agree. In most cases these prisoners are as smart and know as much about their constitutional rights as the law enforcement officer who attempts to inform them of the same. Here the trial court heard the evidence as to admissibility and we have no right to substitute our finding for its finding on the facts.

NOTE.—Reported in 270 N. E. 2d 751.