## Richmond

EMMETT LEE TAYLOR v. COMMONWEALTH OF VIRGINIA.

March 6, 1972.

Record No. 7776.

Present, Snead, C.J., Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*Robert G. Cabell, Jr.,* for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Emmett Lee Taylor was convicted in the court below of robbery and sentenced to serve five years in the penitentiary. We granted him a writ of error, and we are concerned here with two issues—the admissibility of an oral statement made by Taylor following his arrest, and whether the venue of the crime was established to be in Hanover County.

On the evening of September 11, 1969 Paul Snell was driving alone in Richmond when four men in another vehicle invited him to join them. Snell testified that he was lonely and therefore decided to park his vehicle and accept the invitation extended by the strangers. They drove around Richmond for approximately 30 minutes, during which time they purchased and drank some beer and wine. It was

then decided, with Snell's approval, that they would visit "Alice" who lived in the vicinity of Byrd Airport. However, before reaching the airport the driver turned left off Interstate 64 onto a country road that was unfamiliar to Snell. During the journey down this road Snell, who was sitting in the back seat between two men, states that he was hit repeatedly by one of the occupants of the front seat. Finally the car was stopped near a country church, which the trial judge concluded was Rock Hill Church. There Snell was removed from the car, taken behind the church, beaten, robbed of his watch and money and abandoned. All four of the men in the car participated. Snell, although of opinion that Taylor was one of the men involved, was unwilling to make a positive identification of the defendant.

After his assailants left Snell noted a house, which he could see from the front of the church where the robbery occurred, located about "a quarter of a mile down on the right". This house was located on State Highway 619 in Hanover County and is the home of Fred Hayes. From the Hayes home a call was made to the Hanover County Police who responded and took Snell to the hospital.

On the night the robbery occurred two of the individuals who participated were arrested near Snell's parked automobile. The defendant, Emmett Lee Taylor, was arrested on December 12, 1969. Following his arrest Taylor was brought to the Sheriff's Office of Hanover County. Deputy Sheriff B. H. Evans testified that he read the warrant to defendant and explained it to him. He also advised him of his rights, using the following language:

"You are advised that you have the absolute right to remain silent and make no statement whatsoever.

"You are further advised that if you do not choose to remain silent, any statement made by you can and will be used against you in Court.

"You are further advised that you have the right to consult with a lawyer; that you have the right to have a lawyer with you during any interrogation and that if you are unable to employ a lawyer, one will be appointed to represent you.

"You are further advised that if you want a lawyer, either by employment or appointment if you are unable to employ one, you will be given the opportunity to consult with him and have him present during any interview.

"You are further advised that if at any time prior to or during an interview you indicate that you wish to remain silent or want an attorney the interview will cease."

After Evans advised Taylor of his rights he asked him "if he wanted to make any statement". Evans said that the Hanover police require a defendant to sign a form if he is willing to make a written statement. After explaining the procedure to defendant, Evans testified Taylor said "that he did not mind telling me about what he did this particular night on the 11th of September", but "he would not sign anything until he talked to a lawyer". Evans said he asked Taylor if he understood the forms that he had read to him, and Taylor replied he did. The trial judge construed the answer of Taylor to have been: "I want to talk to a lawyer before I sign anything but I understand what you have told me and I am willing to talk." Taylor then gave the officer an oral statement which was consistent with and corroborated the statement made by Snell as to what occurred the evening of the robbery, except that Taylor told Evans "he did not recall beating up anybody or robbing anybody at all and did not remember of anybody in the car doing it". He did admit being in the car with Snell.

Our decision here is controlled by *Land* v. *Commonwealth*, 211 Va. 223, 176 S. E. 2d 586 (1970) and by *Penn* v. *Commonwealth*, 210 Va. 213, 169 S. E. 2d 409 (1969). In *Land*, as here, the accused was fully advised of his rights and understood them. There the accused refused to make a statement but volunteered to give the police "information". We held that his statements made to the police under such circumstances were admissible in evidence because the statements were voluntary and given willingly by the accused.

In *Penn* the accused made no statement immediately following his arrest because he was under the impression that his father was going to get a lawyer for him. Thereafter he replied in the negative when asked if his father had gotten a lawyer and if. he wanted the police officers to have an attorney appointed to represent him. Subsequently Penn decided to make a statement or confession. We found no error in the action of the trial court in admitting in evidence the confession since it appeared that it was made voluntarily, knowingly and intelligently and was in no way coerced or made as the result of any threats or promises.

In the instant case there is no intimation that Taylor was threat-

ened, coerced or promised anything in return for his statement. Credible evidence supports the conclusion of the trial court that the defendant's statement, which implicated him in the robbery, was made voluntarily and knowingly, and after Taylor had intelligently waived his right to the presence of counsel.

■ Defendant further claims that the court erred in refusing to strike the evidence of the Commonwealth on the basis that venue of the crime was not established in Hanover County. We disagree.

On the night of the robbery Paul Snell identified two of his assailants who were then in the custody of the police. When Snell was examined as a witness he was asked: "Now, were the men that were there were any of those men the same men that were in the automobile that you were in—that *left you down in Hanover County?*" He answered: "Yeah. Definitely."

Deputy Sheriff Evans was asked: "As such, did your duties require you to be involved in the investigation of a robbery *that took place in Hanover* on September 11th?" The witness answered: "Yes." Counsel for the defendant objected to the question as leading. The court observed that it was harmless but agreed that it was leading and required the question to be rephrased.

Deputy Sheriff Eugene Helmick testified that on the night of the robbery Snell identified two of the four men who participated in it. Helmick was asked: "How did he identify them?" And he responded: "He said they were the two subjects *that brought him to Hanover County.*"

It further appears from the testimony of Helmick that Highway 619 is located in Hanover County. When he was asked the location of Fred Hayes' house, he answered: "It's on 619, which is located in Hanover County, approximately a half a mile below Ellerson's Garage, on Cold Harbor Road." He was then asked if "that is still in Hanover County", and he answered: "That's still in Hanover County."

The robbery occurred behind a church. When Snell escaped from his assailants he ran into the woods where he remained for about 15 minutes and until he was satisfied that the four participants in the robbery had left. He stated: "At that point I was behind the church in the woods. I walked back into the church yard and toward the road. I saw a light across the street—the road—from the church—a house—and then about a quarter of a mile down on the right I saw another house. At that point I chose to walk down to the house

a quarter of a mile away, mainly because it was well lighted. It was on the main road. . . . [I]t didn't take me long to get there, not over five minutes. . . ."

The only reasonable conclusion that can be drawn from the evidence in this case is that the place of the crime was in the yard of a church located on Highway 619 and within the boundaries of the County of Hanover, and therefore venue has been sufficiently proven. *Hart* v. *Commonwealth*, 131 Va. 726, 109 S. E. 582 (1921). *See also McClain* v. *Commonwealth*, 189 Va. 847, 55 S. E. 2d 49 (1949); *Randall* v. *Commonwealth*, 183 Va. 182, 31 S. E. 2d 571 (1944); *Robinson* v. *Commonwealth*, 197 Va. 754, 91 S. E. 2d 396 (1956).

The judgment of the court below is

*Affirmed.*