Argued March 28, affirmed April 27, 1972

STATE OF OREGON, *Respondent, v.*
JAMES JOSEPH PADILLA, *Appellant.*
496 P2d 256

*Vernon L. Richards,* Sandy, argued the cause and filed the brief for appellant.

*John W. Osburn,* Solicitor General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Burgess, Special Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

The defendant was tried by a jury and convicted of the crime of burglary in a dwelling house. Former ORS 164.230. He appeals making three assignments of error.

On April 9, 1970, there was a burglary of a Portland residence. Neighbors in the area saw the defendant and another man near the residence about the time of the burglary. The Portland police department was notified and one of the neighbors followed the two men to an apartment. The neighbor there met police officers and led them to the apartment. The officers knocked on the door and asked the defendant and one Robert Ruiz if they might be interviewed at

the police station regarding the burglary. The two men were then brought voluntarily to the police station for interviewing. The time was about 7 or 8 p.m. No formal arrest charges were at that time made and the two men initially were not searched, booked, fingerprinted or photographed.

The defendant and Ruiz were separately questioned in an interview room by police detectives Daly and Stone. Officer Daly, who was the only witness at the suppression hearing, testified that before questioning the men, he first read them "the standard Miranda warning." He further testified in response to specific questions by the trial judge that he advised defendant of his right to remain silent, his right to refuse to answer questions and his right to terminate the interview at any time. Officer Daly also asked the two men if they would sign a form acknowledging a waiver of the above constitutional rights. Defendant refused to sign the form; Ruiz did sign. Officer Daly then asked the defendant, "Do you understand these rights as I have advised you?" Defendant replied that he understood his rights. Officer Daly then questioned the two men and, noticing that both had "bulging pockets," asked to examine the contents of their pockets. Both defendant and Ruiz emptied their pockets for Officer Daly who thereupon observed "a lot of change." As part of the change carried by the men, each had a 1964 Kennedy half-dollar. Officer Daly had previously been informed that two 1964 Kennedy half-dollars as well as some foreign bills had been stolen in the burglary he was investigating. After they emptied their pockets and he observed the change, Officer Daly returned the money to the defendant and Ruiz.

After speaking with the defendant and Ruiz,

Officer Daly felt that, although he suspected them of burglary, there was not sufficient evidence to hold them. He testified that if at any time they had wanted to leave the police station he would have had to allow them to do so. At the conclusion of the questioning Officer Daly and another detective went to defendant's apartment to search for the foreign paper money allegedly taken in the burglary. Officer Daly testified that because of the lateness of the hour (the questioning concluded about 8:30 p.m.) and the ease with which money may be disposed of, he did not feel that he had sufficient time within which to obtain a search warrant. When the officers arrived at the apartment they knocked and a man by the name of Spencer answered. Spencer identified himself as the "renter" of the apartment and said that defendant and Ruiz were his roommates. The officers identified themselves as policemen and explained that they were looking for some money which had been taken in a recent burglary thought to have been committed by Spencer's roommates. Spencer, whom Officer Daly testified was at no time a suspect, let them in and permitted them to search the apartment. The officers spent about ten minutes searching but could find nothing linking defendant to the burglary. Officer Daly and his partner then left the apartment building. Spencer was not at this time, prior thereto, or at any time thereafter, suspected by police to have been involved in the burglary under investigation. There is nothing in the evidence to indicate that upon leaving the apartment the officers ordered or in any way suggested that Spencer make an additional search of the premises. About five minutes thereafter as the officers were standing by the curb in front of the apartment building, Spencer came out and gave them some foreign paper money

which he had found under a chair cushion after the policemen left. Spencer was given a receipt for the money; it was later identified as the money taken in the burglary. Within a few minutes defendant and Ruiz, having left the police station following the questioning, arrived at the apartment. Defendant's prosecution and conviction followed.

Prior to defendant's trial he sought to suppress

"* * * all evidence, goods, articles and materials wrongfully seized by members of the Portland Police Department, its officers or agents, pursuant to a search of the premises at 1601 N.W. 23rd street, Portland, Multnomah County, Oregon, on or about April 9, 1970."

This motion was denied by the trial court.

■ Defendant in his first assignment of error contends that the trial court erred in failing to suppress the "evidence seized from the person of the defendant and from the defendant's residence." It is evident from a reading of both defendant's motion and of the trial court transcript that the change observed in defendant's possession, including the Kennedy half-dollar, was neither sought by defendant to be suppressed nor sought by the state to be introduced as evidence. For these reasons we decline defendant's invitation to decide whether Officer Daly's request that defendant empty his pockets constituted an illegal search.

■ Regarding the "evidence * * * seized by members of the Portland Police Department * * * pursuant to a search of the ⌊apartment⌋ premises," the court did not err in denying defendant's motion to suppress. For, it was pursuant to Spencer's independent search of the apartment that the foreign bills

were recovered. The officers at the time had left the building and were outside on the sidewalk. Spencer, in searching for and finding the money, acted on his own, as a private individual and the tenant in control of the premises, without the participation or encouragement of law enforcement officers. His act, indeed, was that of a responsible and law-abiding citizen. Neither the Fourth Amendment to the United States Constitution nor Art I, § 9 of the Oregon Constitution prohibits the admission of evidence so seized. *State v. Bryan,* 1 Or App 15, 457 P2d 661 (1969); *State v. Olsen,* 212 Or 191, 193-94, 317 P2d 938 (1957); *Walker v. Penner,* 190 Or 542, 548, 227 P2d 316 (1951); *State v. Broadhurst,* 184 Or 178, 196 P2d 407 (1948), *cert denied* 337 US 906, 69 S Ct 1046, 93 L Ed 1718 (1949); Annotation, 36 ALR 3d 553 (1971).

■ As his second assignment of error defendant contends that the trial court erred in admitting in evidence Officer Daly's testimony concerning statements made by defendant while he was being questioned at the police station. The evidence indicates that prior to questioning defendant was read "the standard Miranda warning" and specifically advised of his right to remain silent, his right to refuse to answer questions and his right to terminate the interview at any time. After defendant declined to sign the waiver form he was asked if he understood his rights; defendant replied that he did understand his rights. It was stipulated at trial by defense counsel that defendant was read his rights. Nor does defendant contend that he was in any way coerced to answer questions after he had been given the *Miranda* warning. *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966). His only contention here simply is that he did not waive his con-

stitutional rights by continuing to answer the questions asked by Officer Daly at the police station. We disagree.

The Oregon Supreme Court, in interpreting *Miranda v. Arizona,* supra, has stated that

"* * * after the warnings are given and knowingly and understandingly understood by the suspect, the burden is upon the suspect to invoke his known rights." *State v. Ruiz,* 251 Or 193, 195, 444 P2d 32 (1968).

In the case at bar the warnings were given and there was a verbal acknowledgment of understanding. This was followed by conduct by the defendant which is consistent only with a waiver of his rights. *See State v. Matt,* 251 Or 134, 137, 444 P2d 914 (1968); *State v. Wright,* 251 Or 121, 123-25, 444 P2d 912 (1968). There was clearly sufficient evidence to support the trial judge's conclusion that the defendant voluntarily and knowingly waived his constitutional rights.

In his final assignment of error defendant contends that the trial court abused its discretion in refusing to grant a mistrial for improper conduct of the prosecutor and the prosecuting witness. We have examined the record and can find no such abuse. *State v. James Edward Smith,* 4 Or App 261, 478 P2d 417 (1970).

Affirmed.