Argued December 17, 1973, affirmed January 28, reconsideration
denied March 6, petition for review denied April 30, 1974

STATE OF OREGON, *Respondent, v.* WALTER
GARLAND AYERS (No. 39609), *Appellant.*

518 P2d 190

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Doyle L. Schiffman,* District Attorney, Roseburg, argued the cause for respondent. With him on the brief was Brian R. Barnes, Deputy District Attorney, Roseburg.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

Defendant was convicted by a jury of being a felon in possession of a concealable firearm. ORS 166.-270. Defendant admits a previous Illinois felony conviction; however he contends that he did not have "possession or * * * custody or control" of any of the six pistols described in the indictment because the weapons belong to his wife.

Defendant argues four assignments of error, alleging that the court erred: (1) by refusing to suppress statements made by defendant while in custody; (2) by admitting into evidence certain rifles and a shotgun found with the pistols; (3) by denying defendant's motion for mistrial based on certain questions asked of defendant on cross-examination; and (4) by denying defendant's motion for a mistrial after the prosecutor commented on the failure of defendant's wife to testify.

This case stems from a complaint to the police on October 30, 1972, that defendant had allegedly assaulted his wife. When the officers arrived to investigate, defendant's wife gave them a derringer pistol which had been in the bedroom. Defendant was arrested shortly afterward on his way home from work.

After being released on bail, defendant, together with two other men, Walter Rogers and Rick Lamour-

eaux, removed numerous weapons from his house and garage. These weapons included five pistols, a shotgun and several rifles, most of which had been kept in a locked wooden box in defendant's garage. All the pistols, except the derringer the police already had, were kept in this box.

The next day, October 31, police officers returned to defendant's house to execute a search warrant seeking various items of allegedly stolen property, not involved in this case, as well as certain firearms. No firearms were found at defendant's house; however Walter Rogers did advise the officers of the location of the weapons, which were then recovered from Rick Lamoureaux's bedroom.

State Police Officer Daley testified that he served the search warrant on defendant; that he advised defendant of his *Miranda*® rights; that defendant signed the warning card, indicating willingness to answer questions, but that defendant later changed his mind. Officer Daley's recollection of defendant's comment was: " 'Maybe I should see an attorney, or I should talk to an attorney.' "

Defendant was thereupon arrested and taken to the county jail, where he was questioned about the weapons recovered from the Lamoureaux house. According to Officer Daley, defendant admitted that each weapon, including each pistol, was his. Defendant sought to suppress evidence of this admission.

■ We conclude this evidence should have been suppressed. This questioning, after defendant indicated he wanted an attorney, was improper. *State v. Suggs,*

---

® Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

13 Or App 484, 511 P2d 405 (1973). In *Suggs* we said:

> "The law is clear as to the procedure to be followed if an in-custody defendant requests an attorney:
>
>> " 'Once warnings have been given, the subsequent procedure is clear. * * * If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. * * *' *Miranda v. Arizona,* 384 US 436, 473-74, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966)." 13 Or App at 489.

However, in light of the substantial, competent evidence connecting defendant with the pistols charged in the indictment, we conclude that this could not have changed the result of the trial. Therefore the error does not require reversal of defendant's conviction. *Chapman v. California,* 386 US 18, 87 S Ct 824, 17 L Ed 2d 705, *reh denied* 386 US 987 (1967); *State v. Van Hooser,* 266 Or 19, 26, 511 P2d 359 (1973); *State v. Naughten,* 5 Or App 6, 480 P2d 448, Sup Ct *review denied* (1971).

The state presented evidence that defendant and his wife came to Oregon in 1970 and that several of the pistols in question were brought with them. Mr. Gidley (Mrs. Ayers' step-grandfather) testified that when defendant and his wife arrived in Oregon they brought into his house several weapons, including rifles and pistols, wrapped in a quilt. Mr. Keaton (Mrs. Ayers' uncle) testified that defendant stored these weapons, including the pistols, in his camp trailer for several days. Defendant himself testified that these weapons were kept in his garage.

Defendant testified that he gave the pistols to his wife before leaving Illinois in 1970. Thereafter they were kept in a locked wooden box, to which Mrs.

Ayers had the only key. Therefore, defendant argues he did not have possession of the pistols, although he does admit that the rifles were his.

The evidence reveals that whenever these weapons were moved, defendant made the decision to move them and carried out the moving operation. Defendant testified that early on October 31 he moved the weapons—both the rifles and pistols—to the Lamoureaux house because he was worried his wife might sell them. He further said that if his wife was not in the house, he was afraid the weapons would be considered to be in his possession. Defendant used a bolt cutter to open the box but directed Rogers and Lamoureaux to physically handle the pistols while he carried two of the rifles.

■ The evidence establishes that all the weapons were generally intermixed and, with minor exceptions, treated as one group. Defendant claims only the rifles and the shotgun, assigning the pistols to his wife. For this reason evidence that defendant exercised control over all the weapons, moving them in bulk and keeping them in the same container, was relevant to establish "possession or * * * custody or control" of the pistols. Therefore, as to defendant's second assignment of error, the admission of the rifles and the shotgun in evidence was not error.

■■ Possession can be shown by inference and circumstantial evidence. *State v. Miller,* 238 Or 411, 395 P2d 159 (1964); *State v. Moore,* 14 Or App 268, 511 P2d 880 (1973); *State v. Wikum,* 6 Or App 405, 488 P2d 815, Sup Ct *review denied* (1971). Constructive possession can be shown by evidence of control or the right to control. *State v. Weller,* 263 Or 132, 501 P2d

794 (1972); *State v. Oare,* 249 Or 597, 439 P2d 885 (1968).

In *State v. Miller,* supra, our Supreme Court held that circumstantial evidence is sufficient to show that a passenger had knowledge of concealable firearms present in the car. This knowledge of the availability for use of the weapons is evidence of "possession or * * * custody or control" of such weapons. ORS 166.-270. *State v. Miller,* 238 Or at 414; *accord, State v. Smith,* 3 Or App 606, 475 P2d 433, Sup Ct *review denied* (1970). For the above reasons, we conclude that there is evidence from which the jury could reasonably infer that defendant exercised control over all the weapons, including the pistols. *State v. Clipston,* 3 Or App 313, 325, 473 P2d 682 (1970).

■ Defendant's third assignment of error challenges the prosecutor's cross-examination regarding Exhibit 10, a rifle. The prosecutor's questions imply that defendant stole this rifle.

The trial judge sustained defendant's objection and admonished the jury to disregard the questions and answers pertaining to this rifle. This cautionary instruction was given at the request of defense counsel who stated to the judge:

"Now, in the event a mistrial would be in order, we might be able to avoid it by having a stipulation to the jury, when they come back, that the defendant had, in fact, no knowledge that the guns were stolen * * * *."

The judge then gave the following instruction:

"* * * [C]ertain evidence has come into the trial concerning Exhibit 10 that might possibly create the impression that the State contends that this defendant was, in some way, involved with a

stolen weapon and the State does not so contend that he was guilty of any theft, and you are not to so understand it.

"That evidence has been ruled inadmissible and you should disregard the evidence pertaining to Exhibit 10."

Following the judge's cautionary instruction, defendant was granted an exception and the opportunity to submit a further instruction on the subject. No further instruction was ever given to the jury. The record does not contain any proposed instruction nor reveal that one was ever submitted.

■ Objectionable remarks or conduct of counsel may be grounds for reversal if left uncorrected. *State v. Wilson,* 221 Or 602, 351 P2d 944 (1960). In *State v. Seeger,* 4 Or App 336, 479 P2d 240 (1971), we reversed a criminal conviction because of a prejudicial remark by the prosecutor, saying:

"The failure of the court to take affirmative action, either by *instructing the jury to disregard* the remark or by allowing the motion for mistrial, was prejudicial error." 4 Or App at 340. (Emphasis supplied.)

Here the trial judge affirmatively admonished the jury to disregard the prosecutor's implication of theft. We presume the jury followed the court's instruction. *State v. Roberts,* 249 Or 139, 437 P2d 731 (1968); *State v. Drummond,* 6 Or App 558, 489 P2d 958 (1971). Therefore the court did not abuse its discretion by refusing to grant defendant's motion for mistrial on this ground. *State v. Smith,* 4 Or App 261, 478 P2d 417 (1970).

Defendant's final argument concerns his claim of the marital privilege. ORS 139.320. Mrs. Ayers was called as the first witness for the state, at which time

defendant invoked the privilege. During closing argument, the prosecutor commented on defendant's refusal to allow his wife to testify.

■■ The state may call defendant's wife as a witness, thus requiring defendant to assert the privilege before the jury. *State v. Hixson,* 237 Or 402, 404, 391 P2d 388 (1964); *State v. Inman,* 8 Or App 180, 182, 492 P2d 804, Sup Ct *review denied* (1972). After the privilege is claimed, the trial judge is not required to instruct the jury not to draw any inference from defendant's refusal to allow his wife to testify. *State v. Hixson,* supra at 405; *State v. Inman,* supra.

In *State v. Hatcher,* 29 Or 309, 44 P 584 (1896), the prosecutor argued to the jury that defendant's failure to call his wife to testify was proof of the fact that she would have testified adversely to him if called. The Supreme Court said this argument was improper and reversible error.

*Hatcher* was criticized and distinguished in *State v. Dennis,* 177 Or 73, 107-19, 159 P2d 838, 161 P2d 670 (1945).[②] In *Dennis,* the court said "that it is not improper for counsel to comment on the failure of the opposing side to produce or use available and competent witnesses or evidence when the circumstances justify an unfavorable inference from such failure." 177 Or at 107. Although not determining whether *Hatcher* prohibits comment on defendant's refusal to allow his wife to testify (177 Or at 110), the court in *Dennis* implied that some comment might be permissible.

---

[②] State v. Hatcher, 29 Or 309, 44 P 584 (1896), was subsequently overruled on another point by State v. McLean, 255 Or 464, 476, 468 P2d 521 (1970).

"\* \* \* The privilege of the defendant is to exclude relevant and otherwise competent evidence as to the truth or falsity of the charge. This privilege the statute [ORS 139.320] gives him, but it is a shield against the truth, not a sword for the crippling of the prosecution. If, as claimed, an adverse inference unavoidably arises in the minds of the jury from the failure to produce available and relevant testimony \* \* \*, then it appears more in consonance with the modern and enlightened principles of justice that the one who excludes the truth should bear the burden rather than the one who desires, but can not produce it. The law is a practical science. It can not wholly control the rational mental processes of the jury, but it must, and often does, satisfy itself by directing their minds in accordance with rules of law. The State was at least entitled to make clear to the jury that no adverse inference should be drawn against it by reason of the nonproduction of defendant's wife." 177 Or at 118-19.

Our examination of *Dennis* convinces us that the prosecutor's comment in this case was not erroneous. Even assuming, *arguendo,* that the court erred in allowing this comment, the record contains such substantial and convincing evidence of guilt that the error "was very unlikely to have changed the results of the trial." *State v. Van Hooser,* 266 Or 19, 26, 511 P2d 359 (1973); *State v. McLean,* 255 Or 464, 479, 468 P2d 521 (1970).

Affirmed.