Argued September 17, reversed and remanded October 14,
reconsideration denied November 20, petition for review
denied December 27, 1974

STATE OF OREGON, *Respondent, v.* ROBERT
DEAN NICHOLSON (No. C 73-12-3820 Cr),
*Appellant.*
527 P2d 140

*Paul J. De Muniz,* certified law student, Willamette University, Salem, argued the cause for appellant. With him on the brief were Gary D. Babcock, Public Defender, and John K. Hoover, Deputy Public Defender, Salem.

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and THORNTON and TANZER, Judges.

## THORNTON, J.

Defendant appeals from a conviction of manslaughter. ORS 163.125. In his only assignment of error defendant argues that the trial court erred in failing to suppress certain incriminating statements made by defendant during a custodial interrogation.

The central issue presented for our review is whether defendant made a request for the presence of counsel at the conclusion of his *Miranda*[1] warnings.

The statements in issue were made to Detectives Tercek and Blodgett of the Portland police department on December 13, 1973, in the course of an investigation into the strangulation death of Edward Graham. Defendant was approached by detectives in the afternoon of the same day and asked to submit to

[1] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

a photograph. The photograph was taken and defendant was released without being questioned. Later the same evening detectives located defendant and asked him to accompany them to the police station for questioning. Defendant consented and was taken to the police station where he was placed in a second-floor office. Detective Blodgett testified that once defendant entered the office he was not free to leave. At 9:05 p.m. Detective Tercek read defendant his *Miranda* rights from a waiver of rights form. The warning and subsequent statements of defendant and the detective were tape-recorded. Detective Tercek asked defendant to read the waiver form aloud and to indicate verbally if he understood the meaning. The pertinent section of the conversation went as follows:

"[TERCEK:] If you understand all those things, would you read each one of those and tell me that you understand that.

"[DEFENDANT:] I have read this statement of my rights and am fully aware of these rights.

"[TERCEK:] Do you understand that?

"[DEFENDANT:] Yes, I do. * * * I am willing to answer any questions asked of me.

"[TERCEK:] Do you understand that?

"[DEFENDANT:] I understand it. It states: 'I do not desire the presence of a lawyer at this time.' *Which I do.* I understand it. This statement is signed of my own free will without any threats or promises having been made to me. *I will not sign it until I have a lawyer present.*" (Emphasis supplied.)

The tape recorder was turned off at 9:08 p.m. with Detective Tercek noting:

"Okay, the time is 9:08 p.m., and we conclude this interview."

Detective Blodgett took the recording to the deputy district attorney assigned to police headquarters, who advised the detective that in his opinion defendant had not made a request for an attorney. While Detective Blodgett was conferring with the deputy district attorney, Detective Tercek placed a phone in front of defendant, but defendant told the detective he did not know an attorney to call. When Detective Blodgett returned, the detectives had a short conference and then resumed the questioning until approximately 12 midnight, when defendant again requested the presence of an attorney. Defendant sought to suppress the statements made between 9:08 p.m. and 12 midnight.

The state argues that a refusal to sign a waiver form is not per se a refusal to waive *Miranda* rights nor is it a request for an attorney to be present during the interrogation. However, the facts of the case at bar present an essentially different question than those dealt with in the state's cited cases. In the present case defendant made an express request for an attorney in conjunction with his refusal to sign the waiver form.

In two cases cited by the state a suspect did refuse to sign a waiver form until he consulted with an attorney, but in both of the cases the suspect expressly agreed to answer questions. In *United States v. Potter,* 360 F Supp 68 (ED La 1973), *aff'd* 490 F2d 991 (5th Cir 1974), the suspect refused to sign a waiver form in the absence of legal counsel, but agreed to be interviewed by the FBI. The court found such conduct to be a knowing and intelligent waiver of rights. In *Taylor v. Commonwealth,* 212 Va 725, 187 SE2d 180 (1972), the defendant stated to the police that he did not mind telling them what had happened, but that

he would not sign anything until he talked to an attorney. The court found the statement to be an express waiver of rights. In the case at bar the state does not argue nor does the record disclose any statements by the defendant indicating that he wanted to make a statement or that he wanted to continue with the interrogation.

The state relies on *State v. Padilla,* 9 Or App 162, 496 P2d 256 (1972); *State v. Jones,* 35 Ohio App2d 92, 300 NE2d 230 (1973); *Hewitt v. State,* — Ind ——, 300 NE2d 94 (1973); *Hutts v. State,* — Ind App ——, 298 NE2d 487 (1973).

In *Padilla* the court held that a failure to sign a waiver form was not per se a refusal to waive *Miranda* rights. However, the defendant in *Padilla* merely refused to sign the waiver form and did not request the presence of an attorney before he would sign.

*Jones* also involved a situation where the defendant refused to sign a waiver form but did not request an attorney.

In *Hewitt* the court held that a refusal to sign a waiver form did not make statements by defendant involuntary, but in that case the defendant did not ask for an attorney and expressly stated he was willing to talk.

The state also cites *Hutts,* but this case involved a fact situation where defendant signed the waiver form but refused to sign a written statement.

We have listened to the tape recording and conclude that defendant was requesting the presence of an attorney when he stated, "I will not sign it until

I have a lawyer present." We have held that a phrase such as "Maybe I should see an attorney, or I should talk with an attorney," is an express request for the presence of an attorney. *State v. Ayers,* 16 Or App 300, 303, 518 P2d 190, Sup Ct *review denied* (1974). The express request for an attorney in the present case is less equivocal than the above statement, and it is a clear request for the presence of counsel.

Other jurisdictions when faced with a similar fact situation have reached an identical conclusion. In *United States v. Priest,* 409 F2d 491, 492 (5th Cir 1969), the court held that a suspect who had refused to sign a waiver form until he had consulted with an attorney had made an "obvious request" for an attorney. The Indiana court in *Brown v. State,* 256 Ind 558, 270 NE2d 751 (1971), also held that a defendant who refused to sign a waiver form unless he had an opportunity to talk with an attorney was making a request for counsel.

> "The law is clear as to the procedure to be followed if an in-custody defendant requests an attorney:
>> " 'Once warnings have been given, the subsequent procedure is clear. * * * If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. * * *' *Miranda v. Arizona,* 384 US 436, 473-74, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966)." *State v. Suggs,* 13 Or App 484, 489, 511 P2d 405 (1973). *Accord, State v. Ayers,* supra; *State v. Garrison,* 16 Or App 588, 519 P2d 1295, Sup Ct *review denied* (1974).

The trial court concluded in an oral opinion that although the defendant may have wanted an attorney present it was only for the purpose of signing the waiver form, and that the mandate of *Miranda* was not violated when the interrogation continued.

We do not agree with the interpretation given *Miranda* by the trial court. The mandate of *Miranda* does not allow inquiry into the reason for a custodial suspect's request for an attorney, but clearly states that if the suspect requests an attorney the interrogation must cease until an attorney is present.

> "* * * If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. * * *" *Miranda,* 384 US at 444-45.

The language of *Miranda* is clear and absolute and has been followed by this court. *State v. Suggs,* supra; *State v. Ayers,* supra; *State v. Garrison,* supra.

When faced with the decision of whether to sign a form waiving his constitutional rights, defendant requested that counsel be present before he would sign. The request for counsel was clear. After a few minutes of indecision the detectives, upon the advice of a deputy district attorney that a request for an attorney had not been made, continued the interrogation. The record does not disclose nor does the state contend that defendant in any way initiated a continuation of the interrogation. The defendant is not required to make repeated requests for counsel; one is sufficient. We are compelled by the mandate of *Miranda* to hold that all statements made after the initial request for an attorney must be suppressed.

■ The state further argues that by responding to the officers' questions after the *Miranda* warnings were given and after defendant requested an attorney the defendant knowingly and intelligently waived his *Miranda* rights. We dealt with a similar argument in *State v. Garrison,* supra. In *Garrison* the defendant asked for a public lawyer to be present, but the of-

ficers continued to question the suspect after the request was made.

"The state argues that even if the questioning should have stopped at this point, the defendant's decision to make a statement after the second request for an attorney and after the recorder had been turned off was entirely on his own. We again refer to *Miranda v. Arizona* which holds that once a request for an attorney is made it is the duty of the officer to immediately discontinue the questioning. * * * The facts demonstrate that the interrogators did not, in fact, discontinue the questioning; consequently, we reject the state's argument. It is thus necessary to exclude the statements made by the defendant after his first request for an attorney." *State v. Garrison,* supra at 599-600.

We follow the reasoning of *Garrison* and reject the state's argument.

Reversed and remanded for a new trial.

SCHWAB, C. J., concurring.

I concur in the majority opinion, but wish to make it clear that I do so with the understanding that all we are here holding is: (1) the only reasonable interpretation that can be given to the conversation between defendant and police prior to defendant's statements concerning the crime was that he understood his right to have an attorney present *and wanted one to be present;* (2) that if defendant had in fact made it clear that he had no objection to answering questions, but merely was not going to sign anything without counsel's being present there would have been nothing wrong with continuing the questioning; and (3) if defendant had asked for the presence of a lawyer after he had answered some questions, such event would not automatically result in suppresion of the questions asked and the answers given prior to that time.