Argued November 20, reversed and remanded December 9, 1974

STATE OF OREGON, *Appellant, v.*
ROGER DYKE (No. 74-1514), *Respondent.*
528 P2d 1073

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*H. Thomas Evans,* Eugene, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Fort and Tanzer, Judges.

TANZER, J.

This is an appeal by the state from an order suppressing as evidence certain statements made by the defendant two days after the crime.

The defendant was arrested in the evening at the scene of the murder of his mother. He was thoroughly advised of his *Miranda* rights and he expressly waived them. The police officer asked what happened. Defendant responded, "I'm afraid I can't tell you." The officer said, "Well, tell me what happened." The defendant responded, "I shot her, that's all there is to it." The defendant then identified the gun as his father's weapon. When asked why he killed his mother he responded, "No, I refuse to answer." Asked again if he wanted to say anything else about it he responded, "No, I don't think that would be acceptable for a police report," and the questioning ended.

The defendant was then placed in the police car. He mumbled a few cryptic comments, the last of which was "My mother is dead, isn't she," and he fell asleep.

He was taken to the hospital where a crystalline substance was pumped from his stomach. He awoke the next day and asked a few questions relating to whether he was under arrest and, if so, for what charge and he fell back asleep.

The following evening, two days after the crime, defendant once again awakened and Detective Griesel came to question him. Griesel and his partner talked with defendant for 15 minutes about unrelated matters in order to satisfy themselves that he was alert and responsive. The defendant then asked if he was being held for the police. Griesel responded affirmatively and advised the defendant of his *Miranda* rights. The defendant responded that he understood each right. They then questioned him about the killing and he made various incriminating statements. Occasionally he would close his eyes and continue talking. After about a half an hour the defendant complained of pain in his arm from the intravenous feeding and the police terminated their questions.

The trial court found that the police testimony was credible; that the situation was free from coercion and that defendant's statements were in fact voluntarily made. There is no issue raised concerning timely appearance before a magistrate. It then ordered all statements made to Detective Griesel suppressed as evidence. It reasoned that *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), barred further custodial questioning after any invocation of the right to counsel and that, by analogy, an invocation of the right to silence equally bars further questioning. The trial court particularly referred to *State v. Garrison,* 16 Or App 588, 519 P2d 1295, *rev den* (1974), and *State v. Suggs,* 13 Or App 484, 511 P2d 405 (1973),

as requiring a strict application of the exclusionary rule where the right to counsel is once invoked and thus, in parallel fashion, where the defendant has invoked his right to silence.

We start as the trial court did with *Miranda v. Arizona,* supra, 384 US at 473-474, wherein the United States Supreme Court stated in the course of its analysis of the protection of the right of counsel:

> "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. * * *" (footnote omitted.)

That language has been characterized as "oversimplification," McCormick, Evidence (3 ed) 334, § 154, in the course of an explanatory passage. That conclusion is supported by the language of the actual holding of *Miranda:*

> "* * * He [the subject of custodial interrogation] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *Opportunity to exercise these rights must be afforded to him throughout the interrogation.* After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are dem-

onstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him. (emphasis supplied, footnote omitted.) 384 US at 479.

The application of *Miranda* by the Supreme Court and this court of Oregon has been consistent with the language of the holding that "[o]pportunity to exercise these rights must be afforded to [a person in custody] throughout the interrogation." In *State v. Whitewater*, 251 Or 304, 445 P2d 594 (1968), an arrested defendant was advised of his rights by a magistrate and requested the appointment of counsel. The police ushered him from court and immediately thereafter again advised the defendant of his rights. He waived them and made statements in answer to police questioning. In affirming the conviction based in part upon those statements, the Supreme Court held:

> "When a defendant is fully advised of his rights and knows what he is doing, the responsibility, in the absence of some showing of coercion, rests with him. If he decided to answer questions under these circumstances without first talking to counsel or having counsel present, the evidence of his statements is admissible. *State v. Rosenburger*, 242 Or 376, 490 P2d 684; *State v. Atherton*, 242 Or 621, 410 P2d 208, cert. to US S Ct denied 384 US 1025." 251 Or at 308.

This court had occasion to apply the ruling of *Whitewater* in *State v. Freeman*, 5 Or App 372, 484 P2d 867 (1971), where the defendant, after his arrest in California and after repeated advice of his rights, refused to talk to the California authorities. An Oregon police officer came to escort the defendant back to Oregon. Not knowing of defendant's earlier refusal, he readvised the defendant of his rights and the defendant made statements. We held that the statements

were admissible because after the defendant has been advised of his rights, it is for him to show involuntariness of his statements.

Our later decisions in *Suggs* and *Freeman* as well as *State v. Nicholson,* 19 Or App 226, 527 P2d 140 (1974), and *State v. Ayers,* 16 Or App 300, 518 P2d 190, *rev den* (1974), are not to the contrary. In each of those cases the defendant was advised of his contitutional rights per *Miranda* and at some point in the questioning indicated a desire for counsel. In each case, the questioning continued and we held the incriminating statements obtained thereby to be inadmissible. Particularly in *Suggs* and *Garrison,* the continuing interrogation was in the nature of persuasion to forego the attempted claim of constitutional right.

■■ In this case, there was neither persuasion nor continued questioning. Defendant was at all times afforded the opportunity to exercise his constitutional rights as required by *Miranda.* During questioning at the scene, defendant answered some questions, refused to answer another question and declined to say anything further. The law does not prohibit him from changing his mind. If he can change his mind, then the police are entitled to ask him if he has changed his mind, but under *Suggs* and *Freeman* they cannot attempt to persuade him to do so and under *Ayers* and *Nicholson* they may not continue to question him after he claims his rights. Here the police again advised the defendant of his rights and the defendant knowingly waived them. As the Supreme Court held in *Whitewater,* a person who knows his rights may speak even though he has earlier declined to do so.

Although there is authority for the state's assertion that the right to counsel and right to silence should be differently treated, e.g., *McCormick,* ibid., we need not draw such a distinction in this case.

■ Defendant contends, despite *State v. Whitewater* to the contrary, that if further questioning is not absolutely barred, then there must be an intervening time period during which the defendant is able to reconsider his position and that such time period was not available to this defendant because of his unconsciousness throughout most of the interval. The issue, however, is voluntariness at the time of the waiver and statement. The preceding events reflect on voluntariness, but the law does not require any specific interval so long as the opportunity to invoke one's constitutional protections is continuously afforded.

The defendant's voluntary statements were not obtained in a manner violative of *Miranda v. Arizona* nor Oregon case law. They being admissible, the order suppressing them was erroneous.

Reversed and remanded.