STATE OF OREGON, *Respondent,*
*v.*
JAMES ORVILLE MOORE, *Appellant.*
(No. 38617, CA 9568)

579 P2d 320

Thomas O. Branford, Newport, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Defendant was charged in four separate informations with second degree burglary of a laundry, a church and two residences in Newport. ORS 164.215. His motion to suppress statements given to various police officers was denied in part. He then waived his right to a jury trial and was convicted on stipulated facts of the church burglary. Defendant appeals the denial of his motion and the admission of incriminating statements at trial over his continuing objection.

At approximately 3 a.m. on July 14, 1977, defendant was apprehended by two police officers inside a laundry. He was taken outside and searched for weapons. The officers removed various items from his person and placed them on the sidewalk. Before being advised of his rights, defendant volunteered the information that some of the property found on his person belonged to him and other property—in particular, a piece of cloth or gauze—had come from inside the building.

While the first officer advised defendant of his *Miranda* rights, the other officer went to the patrol car for a tape recorder. Defendant inquired of the first officer concerning his right to a court appointed counsel. The second officer returned and the first went inside the laundry. The second officer advised defendant again of his rights. Defendant replied, "I'd rather have an appointed attorney before I say anything." Despite defendant's expression of his desire for counsel, the second officer continued to question him at the scene and on the trip to the police station, obtaining incriminating statements concerning the burglary of the laundry. At the station, while defendant waited with the second officer to be booked, he pulled a box cutter from his pocket and handed it to the officer, saying, "This also belongs to the [laundry]."

At approximately 7:40 a.m. the second officer went to defendant's cell, awakened him and interrogated him again about the laundry and about his possible

involvement in a break-in at the laundry annex and a theft from a vehicle. Defendant confessed to those other crimes. At that time the officer also asked him if he had broken into any other buildings.

At 8 a.m. the two arresting officers went off duty and a third officer came on. The officers going off duty told the third officer about the laundry break-in and about arresting defendant. They failed to mention that defendant had attempted to exercise his rights to remain silent and to consult with an attorney. The description of defendant—a tall, thin man with a cut on his leg—and the manner of his entry into the laundry—breaking through a skylight—caused the third officer to suspect him of a recent burglary of a bookstore committed in a similar manner by a similarly described man. Blood had been found in the bookstore.

The officer took defendant from his cell to a small, windowless interrogation room and informed him of his rights. Defendant replied, "I talked to another officer. I don't want to put it on tape." The officer turned off the tape recorder and asked defendant if he had committed a burglary of the bookstore. The officer testified on direct examination at the suppression hearing that the defendant said, "I don't want to talk about that, I don't think so." (On cross-examination he testified in general that at no time did defendant seek to cut off questioning.) The officer then talked with defendant about his "background." Defendant asked for a cigarette; he and the officer went to his cell, got cigarettes and returned to the interrogation room. The officer again asked defendant if he had burglarized the bookstore. At that very moment the lights in the entire building went out. Just after they had gone out, defendant confessed to the bookstore burglary. The lights remained dark for 15 or 20 minutes. During that time or shortly thereafter defendant, in response to questions by the officer, confessed to the burglaries of the two residences and the church.

Defendant moved for an order suppressing "all statements made by the defendant after he invoked both his right to remain silent and requested an attorney." The court suppressed only those statements made to the second officer, with the exception of defendant's volunteered statements concerning the box cutter and the property found on his person at the scene. In ruling, the court stated:

"Actually, in this particular case the Court is going pretty much on one of the first Oregon cases in this matter, *State v. Dyke,* [19 Or App 705, 528 P2d 1073 (1974)]. As on one matter, in effect that case holds that the defendant after he's been advised of his rights it is pretty much up to him to show involuntariness of the statements.

"* * * * *

"Now, it is the feeling of this court that when [the third officer] again questioned Mr. Moore, gave him his rights, Mr. Moore knew that he had a right to cut off the questioning at any time. He did not do so. Under *Michigan vs. Mosley,* [423 US 96, 96 S Ct 321, 46 L Ed 2d 313 (1975)], particularly when he was asked questions concerning other matters than he was arrested on and which he had originally stated he wanted an attorney before he answered questions on, I feel that he voluntarily made these answers when he knew his rights. He could have cut it off at any time, he could have asked for an attorney at any time, he did not do so. I feel that these answers were of a nature that they were voluntary, they are not inadmissible under the ruling of *Michigan vs. Mosley* and the *State vs. Dyke* cases. * * *"

Defendant concedes that the third officer acted in good faith, without actual knowledge of defendant's prior assertion of rights. Nevertheless, he argues, the questioning by the third officer before defendant had been permitted to consult with an attorney violated his rights under *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).[1]

---

[1] Defendant does not argue on appeal that the third officer violated his right *to remain silent* by continuing questioning after defendant said, "I don't want to talk about that, I don't think so." He focuses solely upon the right to an attorney.

*Miranda* and *Mosley* have made it clear that

"* * * unless law enforcement officers give certain specified warnings before questioning a person in custody, and follow certain specified procedures during the course of any subsequent interrogation, any statement made by the person in custody cannot over his objection be admitted in evidence against him as a defendant at trial, even though the statement may in fact be wholly voluntary." *Michigan v. Mosley, supra,* 423 US at 99-100. (Footnotes and citations omitted.)

The question presented is whether defendant's confession to the church burglary was obtained in compliance with *Miranda* and subsequent cases in that line.

In *Miranda* the court stated:

"Once warnings have been given, the subsequent procedure is clear. * * * If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his desire to remain silent.

"* * * * *

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived * * * his right to retained or appointed counsel. * * *" 384 US 473-75.

In several cases we have held that after a person in custody has requested an attorney, continued questioning or attempts to persuade him to talk are impermissible. *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978); *State v. Nicholson,* 19 Or App 226, 527 P2d 140, *rev den* (1974); *State v. Garrison,* 16 Or App 588, 519 P2d 1295, *rev den* (1974); *State v. Ayers,* 16 Or App 300, 518 P2d 190, *rev den, cert den* 419 US 1093 (1974); *State v. Suggs,* 13 Or App 484, 511 P2d 405 (1973). In *Paz,* however, we recognized that in certain circumstances the state may

[ 654 ]

be able to meet the burden of proving that defendant had freely and knowingly waived his right to counsel after once having invoked it. We noted that

"* * * in each instance that we held admissible statements made by a defendant after he asserted his right to counsel under *Miranda,* the defendant was (1) subsequently given *another Miranda* warning after an initial warning and (2) the police questioning which ultimately elicited the incriminating statements occurred at least several hours or days after the initial questioning." 31 Or App at 866. (Citations omitted.)

■■ Even after resolving all conflicts in the evidence as to "historical facts" in the manner most supportive of the order, *Ball v Gladden,* 250 Or 485, 443 P2d 621 (1968), we find the evidence of a knowing and voluntary waiver of the right to counsel woefully inadequate when tested by the standards of *Paz.* The interrogation by the third officer took place in the same police station in which the prior questioning had occurred and followed that questioning and the confessions by only a few minutes. Defendant made no express waiver of his right to an attorney after being informed of his rights by the third officer. The fact that the third officer gave him the warnings is a factor to be considered, but it is not sufficient in itself to meet the state's burden. *Miranda v. Arizona, supra; State v. Garrison, supra.* It does not matter that the third officer was not told, as he should have been, that the defendant had attempted to invoke his rights to remain silent and to consult with an attorney. *State v. Paz, supra; State v. Garrison, supra.*

■■ Both the trial court and the state have emphasized that the third officer questioned defendant about crimes separate from those about which he was questioned by the second officer. While that may be a relevant factor in some cases,[2] it is not determinative.

___

[2] In *Michigan v. Mosley, supra,* the court held that interrogation about an unrelated crime after a significant interval did not violate defendant's right to remain silent, which had been asserted in earlier questioning. We tend to agree with the observation of Mr. Justice White in his concurring

*Westover v. United States,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). Moreover, while the crimes about which the third officer questioned defendant may have been technically distinct, they were clearly related to those about which he had been interrogated by the second officer. Far from being evidence of an effective waiver, the relationships among these crimes suggests an additional factor in support of the conclusion that there was no intelligent and voluntary waiver. The crimes about which the two officers questioned were related in circumstance. All (with the exception of the theft from the vehicle) were burglaries and all were committed in the same city within a period of about two weeks. The laundry burglary and the bookstore burglary—the latter being the first in the series of crimes about which defendant was questioned by the third officer—were even more closely related: In each case entry was accomplished by breaking a skylight, and the blood found in the bookstore suggested a possible motive for breaking into the laundry and taking the gauze. More to the point, the confessions obtained by the second officer in total disregard of defendant's assertion of rights eliminated much of defendant's incentive to insist upon (and his hope of being allowed) a consultation with an attorney before discussing the other burglaries with the third officer. In that sense, the prior confessions put him at a psychological and practical disadvantage.

We find that defendant did not effectively waive his right to counsel before confessing to the third officer. The confession to the church burglary should have been suppressed. The conviction, which was based

opinion that the considerations are different when counsel has been requested:

"* * * [T]he accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." 423 US at 110, n 2.

solely upon the confession, is reversed and the cause is remanded for a new trial.

Reversed and remanded.