SNOW *v.* STATE OF INDIANA.

[No. 29,051.   Filed April 14, 1955.]

*H. Perry Smith,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, *Owen S. Boling* and *Frank E. Spencer,* Deputy Attorneys General, for appellee.

ACHOR, J.—This is an appeal from the Criminal Court of Marion County of a criminal cause in which the appellant was tried by court and convicted of the offense of robbery while armed with a deadly weapon.

The error assigned is the overruling of appellant's motion for new trial. The grounds asserted by appellant in such motion are as follows:

1. Error of law occurring at the trial in this: That the Court erred when it overruled defendant's verified motion to reject and suppress evidence.

2. That the decision of the Court is contrary to law.

3. That the decision of the Court is not sustained by sufficient evidence.

Appellant's brief does not comply with the requirements of Rule 2-17 (c) (d) (e) and (f). Appellant has not set out in either his motion for new trial or his brief the evidence to which he directed his "motion to reject and suppress." He has not set out the ruling of the court (if any) thereon, nor has he cited the record and page numbers where such ruling can be found. Therefore, it is impossible for this court to determine from the briefs whether or not there was any evidence admitted which should have been suppressed, or whether there was any error because of

the ruling of the court upon defendant's motion with respect thereto. Neither was there a sufficient recital of the evidence upon which to determine whether or not "the decision of the court was contrary to law." The rule is well settled that where an appellant has not substantially complied with such rule, appellee need not supply the omissions but may rely upon the court to enforce the rule. *Davis* v. *Broyles* (1914), 55 Ind. App. 316, 103 N. E. 815 (and cases cited) ; *Webster* v. *Bligh* (1912), 50 Ind. App. 56, 98 N. E. 73. And this court will not search the record to reverse. *Wood* v. *C. & E. R. R. Co.* (1939), 215 Ind. 467, 18 N. E. 2d 772, 20 N. E. 2d 642; *State ex rel.* v. *Hinds, Trustee* (1929), 200 Ind. 613, 165 N. E. 754.

Appellant also urges that the lower court erred in not filing or authorizing the Clerk to include in the bill of exceptions appellant's motion to modify the judgment and sentence. However, no question is presented by said motion as the error, if any, is not assigned in the motion for new trial or as independent assignment of error. Furthermore, an examination of the motion discloses that it is nothing more than an appeal to the mercy of the court. It makes no reference to any error made in the course of the proceedings. Therefore, it could present nothing for consideration by this court. We conclude, therefore, that appellant has presented no question for review under the rules of this court as such rules have been interpreted and applied.

Appellant has presented to this court the question as to whether or not in this case his rights under Sec. 11, Art. 1 of the Constitution of Indiana and the Fourteenth Amendment to the Constitution of the United States to be secure in his person, house, papers and

effects against unreasonable search or seizure, have been violated.

In regard to the alleged illegal search and seizure asserted by appellant, the following facts appear from the transcript of the evidence: William Hochgesang was held up at the point of a shotgun by Ernest Snow and another man and robbed of $80 at about 6:15 on the night of December 15, 1951, in the 2400 block of Winthrop Avenue in the City of Indianapolis. This location was approximately two blocks from 2226 Bellefountain. William Ervin, an insurance salesman who was collecting in the neighborhood, witnessed the holdup and was notified by Hochgesang that it was in fact a robbery. After waiting until Hochgesang had called the police, Ervin then drove in his car to 2200 Bellefountain to make a collection but went to the wrong house, going up to the porch of the house at 2226 Bellefountain by mistake. When he stepped upon the porch he was attacked by two men. A tussle followed in which all three went over the bannister. Ervin who was carrying a gun (with permit) freed himself enough to fire a shot to "let them know I had possession of a gun." One man ran away but "Snow ran upon the porch to get the shotgun he had on the porch." Ervin then fired another shot which hit Snow in the arm. He then held Snow at gunpoint at the top of the porch while he stood at the bottom of the steps until the police came. The officers who first answered the call had already been alerted as to the robbery and were in search of the two men who had robbed Hochgesang when they received the call to go to 2226 Bellefountain. When the police arrived Ervin was standing in the yard with a revolver aimed at Snow and Snow was standing at the top of the porch, with blood seeping through his jacket from the gun wound. The evidence is in conflict as to

whether the shotgun was on the porch or in Snow's hand. The officers first seized both the guns. Ervin reported the facts of the assault upon him and of the prior robbery. The officers called for another police car to bring Hochgesang to the scene. Snow, Ervin and the officers went into the house. John Bailey, who lived at that address with his family, testified that Snow (his brother-in-law) had a room there, that the police were "welcome to come in" since they had been called to the house. Snow was formally arrested by the police officers in the front room of the house after Hochgesang arrived and identified him as the man who had robbed him.

The "effects" which were allegedly obtained by illegal search and seizure from Snow and admitted into evidence, included the shotgun and the blood-stained jacket which Snow was wearing at the time of the shooting and arrest. The shotgun was introduced in evidence. The jacket was identified and marked as an exhibit but not offered or received in evidence.

Under the facts before us, it is immaterial whether the police officers took possession of the shotgun and jacket before or after they formally placed appellant under arrest. It is undisputed that the officers arrived on the scene of a violent breach of the peace. They found two men with guns in their possession, with one man bleeding from a gun wound and the other holding him at gun point. They had a duty to take charge of the situation and prevent further violence. The seizure of the guns was a reasonable if not mandatory precaution.

As a result of their lawful investigation of the cause of the violence it was disclosed that appellant was the man who had committed the robbery a very short time before and for whom the officers were in active search when alerted to this scene of vio-

lence. Under these circumstances the seizure of the shotgun and jacket by the officers without a search of any kind was incident to a lawful investigation and a lawful arrest. They were therefore admissible in evidence. See: *Rucker* v. *State* (1948), 225 Ind. 636, 77 N. E. 2d 355; *Parts Mfg. Corporation* v. *Lynch* (1942), 129 F. 2d 841, 143 A. L. R. 132, and annotations; *Pettit* v. *State* (1935), 207 Ind. 478, 188 N. E. 784; *Campbell* v. *State* (1926), 198 Ind. 231, 153 N. E. 397.

We find no indication from the record that appellant's constitutional rights against unreasonable search and seizure had been violated.

Judgment affirmed.

NOTE.—Reported in 125 N. E. 2d 802.