MIMS *v.* STATE OF INDIANA.

[No. 469S83. Filed October 6, 1970.]

*Bayliff, Harrigan, Cord & Maugans, Bolinger, Van Dorn & Andrews,* both of Kokomo, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden, Kenneth M. McDermott, R. Michael Bruney,* Deputies Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction for murder during the commission of a robbery in violation of Acts 1941, ch. 148, § 1, Burns Ind. Stat. Ann. § 10-3401. Trial was by jury in the Carroll County Circuit Court and appellant was sentenced to life imprisonment.

Appellant's first contention is that the trial court erred in

overruling appellant's pre-trial motion to suppress a confession obtained from appellant in violation of appellant's privilege against self-incrimination guaranteed by the Fifth Amendment to the U. S. Constitution and Article 1 § 14 of the Indiana Constitution. The facts which tend to support the trial court decision are as follows:

On February 24, 1968, appellant was arrested and placed in the Howard County jail on a charge of aggravated assault and battery, which was unconnected with this case on appeal. On February 28, Officer Beatty of the Kokomo Police Department arrested appellant in his cell without a warrant on a preliminary charge of the murder of one Walter Kibler. Beatty testified that he gave appellant the Kokomo Police Department's standard warning of his constitutional rights and appellant signed the paper on which this warning was printed. Beatty further testified that appellant said he would not talk to Beatty about the Kibler murder case and that appellant stated he wanted to talk to the attorney his family was going to get him before talking about the murder charge. Beatty put this in his report to his superior officer.

Officer Harrison of the Kokomo Police Department testified that he interrogated appellant for about 45 minutes on the morning of February 29, 1968, but appellant told him that he did not want to talk to the police about the murder charge until he, appellant, had talked to a lawyer. Even though appellant repeated this numerous times Harrison continued to interrogate appellant. Finally appellant told Harrison to come back in twenty-four hours. Harrison returned on the morning of March 1, and again appellant, even more emphatically, told Harrison he did not want to talk about the murder charge until he talked to a lawyer.

Raymond Keller, Chief of the Kokomo Police Department, testified that he sent detective Sgt. Nicholas to interrogate appellant on March 1, 1968, because the other officer had failed to get a statement from appellant on this case and Nicholas had 20 years experience in police work. Keller said

he knew appellant had said he wanted to talk to an attorney before talking to the police.

Sgt. Nicholas testified that on March 1, 1968, Chief Keller told him to interview appellant but that he, Nicholas, did not know that appellant had refused to talk until he had consulted an attorney. Nicholas read appellant his rights and talked to appellant about a lot of things in general. Appellant did not talk to Nicholas about the murder charge until Nicholas showed appellant a statement purporting to be the confession of one Alvin Beets which implicated appellant in the Kibler murder. Appellant then signed a waiver of rights form and a written statement concerning the murder charge, which was introduced against appellant at trial.

The above evidence is all taken from police officers and does not include the appellant's version of the events. We believe the evidence shows a blatant violation of appellant's constitutional right to remain silent and have the assistance of counsel.

Appellant had an absolute right to remain silent and have an attorney present during police interrogation. *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 6 L. Ed. 2d 694; *Malloy* v. *Hogan* (1964), 378 U. S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653. In the *Miranda* case the U. S. Supreme Court said:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make

may be used as evidence against him, that he has a right to the presence of an attorney, either retained or appointed."

According to the police testimony appellant was advised of this right and it is obvious that he exercised that right on three separate, successive occasions when the police ■ officers attempted to interrogate him about the Kibler murder. The police, however, persisted in returning to appellant's cell day after day for three days attempting to get appellant to give a statement on the Kibler murder. When appellant told the police he did not want to talk about the murder charge until he had talked to an attorney appellant should not have been questioned about the murder any further until he had consulted with an attorney. As the Supreme Court said in *Miranda*:

> "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. *If however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.* The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned."

> "If an individual indicates that he wishes the assistance of counsel before any interrogation occurs, the authorities cannot rationally ignore or deny his request on the basis that the individual does not have or cannot afford a retained attorney. The financial ability of the individual has no relationship to the scope of the rights involved here."

> "Once warnings have been given, the subsequent procedure is clear. *If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.* Without the right to cut off questioning, the setting of incustody interrogation operates on the in-

dividual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

On March 1, at the second attempt that day to obtain a statement from appellant, he was told that an alleged accomplice had implicated appellant in the murder. Thereafter appellant signed a waiver of rights form used by the Kokomo police department and a statement used against him at the trial.

Appellee argues that no statement was obtained from appellant at the first three interrogations so the *Miranda* exclusionary rule is not relevant to them, and appellant waived his rights before giving the only statement introduced against him at the trial. Appellee points to the following quote from *Miranda* and argues that this shows appellant could waive his rights even at the fourth attempt at interrogation:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the Government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retain or appointed counsel."

We do not believe that under these circumstances the fact that appellant signed a waiver form indicates he knowingly and intelligently waived his right to remain silent. In this case the persistent attempt by the police to interrogate appellant on February 28, 29, and twice on March 1, effectively told appellant that regardless of what abstract rights he might have been advised he had, he was going to be kept in jail and interrogated every day until he gave a statement.

Appellant didn't waive his rights because in effect he knew he didn't have any.

Even then appellant only signed the waiver after being told another boy had confessed and implicated appellant in the murder. Again we quote *Miranda:*

> "Whatever the testimony of the authorities as to waiver of rights by an accused, the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights. In these circumstances the fact that the individual eventually made a statement is consistent with the conclusion that the compelling influence of the interrogation finally forced him to do so. It is inconsistent with any notion of a voluntary relinquishment of the privilege. *Moreover, any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege.* The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation." (Emphasis added).

Appellant couldn't know the legal implications of the other boys confession and we can think of no situation where a defendant would be more in need of a lawyer than in deciding whether to waive his right to remain silent because he had been implicated in a crime by an alleged accomplice.

We hold that on this record it is clear appellant did not knowingly and voluntarily waive his right to remain silent until he had consulted with an attorney and it was error to admit his statement.

Judgment reversed.

Hunter, C.J., Arterburn, Givan and Jackson J.J., concur.

NOTE.—Reported in 262 N. E. 2d 638.