JAMES MICHAEL MILLICAN *v.* STATE OF INDIANA.

[No. 1-1272A110. Filed August 23, 1973.]

*John C. Cox,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant Millican was charged by affidavit with assault with intent to kill, convicted after a trial by jury, and sentenced to a term of 2 to 14 years.

Millican timely filed his motion to correct errors, which was overruled. He appeals, raising the following issues:

(1) Did the trial court err in overruling appellant's verified motion for change of venue from the judge?

(2) Did the affidavit sufficiently charge the offense of assault with intent to kill?

(3) Did the court err in overruling motion to suppress certain oral statements made by appellant after he had been taken into custody?

The evidence most favorable to the State showed that on March 14, 1972, Millican was seen in a restaurant in Evansville, carrying a pistol. He informed four patrons there that he was "definitely going to kill Pat Cullen." Later that morn-

ing, at the side of the Laborer's Union Hall in Evansville, Millican fired a .12 gauge shotgun at Cullen, missing him.

When the police arrived at the scene Millican informed the officers that he didn't have "any beef" with them and voluntarily surrendered the shotgun. He also told them that at the time he was rather upset and he was lucky he missed Cullen because he was using magnum loads in the gun.

Millican was taken to police headquarters, advised of his rights and then questioned. He refused to sign any statement until he had talked to an attorney. Millican, however, after refusing to give a statement, continued a discussion with the officers, remarking in substance that "his uncle always taught him that it was his policy to get them before they got him and that back where I come from, that's the way they do."

Defendant sought to have evidence of his oral statements suppressed for the reason that he had told the officers, after he was in custody, that he refused to make any statement, citing the landmark *Miranda* decision for authority.

Shortly after Millican was charged, the State made a request for a mental examination to determine his competency to stand trial. The medical report, filed with the court, showed that Millican had an extensive criminal record, had a psychopathic personality and that although his prognosis was poor, he was competent to stand trial.

The record reveals that the medical reports were filed by mail and reviewed by the court without the presence of the prosecuting attorney or counsel for the defendant. However, the record further discloses that prior to the filing of the medical reports the parties had agreed in open court that the medical hearing was to be vacated and the matter submitted on the doctors' reports.

Upon gaining knowledge of the fact that the medical reports had been filed without his knowledge or within his presence, Millican filed a verified motion for change of venue

from the judge. This motion was denied without a hearing thereon.

The first issue to be determined is whether the trial court erred in overruling Millican's motion for change of venue from the judge.

Criminal Rule 12 provides in part:

"In all cases where the venue of a criminal action may now be changed from the judge, such change shall be granted upon the execution and filing of an unverified application therefor by the state of Indiana or by the defendant. Upon the filing of a properly verified application, a change of venue from the county shall be granted in all cases punishable by death and may be granted in all other cases when in the court's discretion cause for such change is shown to exist after such hearing or upon such other proof as the court may require. Provided, however, that the state of Indiana or the defendant shall be entitled to only one [1] change from the judge and the defendant shall be entitled to only one [1] change from the county.

\* \* \*

Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days, and the ruling of the court may be reviewed only for abuse of discretion."

In the case at bar, Millican's application for change of venue complied with the above technical requirements.

In *Hanrahan* v. *State* (1968), 251 Ind. 325, 241 N.E.2d 143, our Supreme Court faced substantially the same question as was presented in this appeal. In *Hanrahan* the appellant filed a verified motion for change of venue from the county. The record indicated that the prosecution did not present any

answer or evidence to rebut the application and the appellant was not afforded a hearing or an opportunity to present evidence before his motion was overruled.

The court held:

"The verified application, until refuted by the prosecution, stands as the only evidence upon which the court can base its decision. If the application states a cause for which a change of venue should be granted, then the necessity for a change of venue has been prima facie established. It is of course within the discretion of the trial court to question the credibility of an application whose veracity has been attacked by the prosecution. It may also be within the courts discretion to question the credibility of an uncontroverted application, but this should be done only after affording the petitioner a hearing or other opportunity to support his application with additional evidence.

We hold that to deny an uncontroverted, verified application for change of venue without affording petitioner some opportunity to present additional evidence in support of said application is an abuse of discretion by the trial court, and that such a denial in this case constitutes reversible error. It should be noted that this holding does not require a refutation by the prosecution in all cases before the trial court can overrule a verified application for a change of venue; the credibility of the application can be questioned even absent such a refutation. But where the credibility of an uncontroverted verified application is to be the sole basis for the denial, the petitioner should be allowed a hearing or other opportunity to bolster his credibility with supporting evidence."

See, also, *Brown* v. *State* (1969), 252 Ind. 161, 173, 247 N.E.2d 76; *Cooper* v. *State* (1972), 259 Ind. 107, 284 N.E.2d 799; *Knight* v. *State* (1973), 155 Ind. App. 680, 294 N.E.2d 158.

On the basis of *Hanrahan, supra,* Millican should have, at the very least, been afforded a hearing or an opportunity to present evidence on his motion. However, in *Beck* v. *State* (1961), 241 Ind. 231, 171 N.E.2d 696, our Supreme Court seems to imply that even more strict

standards apply when an appellant's motion is for change of judge rather than change of county. In that case Beck filed a late affidavit for change of judge, alleging recently discovered facts indicating bias and prejudice of the judge. Despite Beck's testimony at the hearing on the motion that he had gained no knowledge of any new facts as set out in the affidavit, our Supreme Court held that the trial court erred in denying the application for change of judge.

The court tested Beck's late application against Supreme Court Rule 1-12 B which was nearly identical to the requirements under the present Criminal Rule 12 and held ". . . it is our view that in criminal cases the absolute right to a change of judge exists for recently learned prejudice upon a proper affidavit for change. . . ."

On the above authority, we therefore hold that the trial court erred in overruling Millican's motion for change of venue from the judge.

The second issue for review is whether the affidavit sufficiently charged the offense of assault with intent to kill. Defendant-appellant expressly waived this issue in oral argument and therefore it requires no determination by this court.

The third and final issue for review is—did the trial court err in overruling the motion to suppress certain oral statements made by appellant after he had been taken into custody?

Millican argues that statements taken from him after he refused to sign a waiver of rights form were improperly admitted into evidence. He asserts that his refusal to sign the waiver should have put the officers on notice that any statements made thereafter were inadmissible.

The State maintains, in response thereto, that while a signed statement is a strong indication of a valid waiver, its absence does not preclude a finding of such.

The United States Supreme Court, in *Miranda* v. *Arizona* (1966), 384 U.S. 436, held:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."

The circumstances surrounding Millican's refusal to sign the waiver of rights form are revealed in the testimony of Detective Art Wolf:

"Q. Alright. After you had read the rights and before he made any statements, did the defendant request the presence of an attorney?
A. No, however he did say that he wouldn't sign until he had talked to his attorney.

\* \* \*

Q. Did you ask this defendant if he wanted to sign?
A. I believe we asked him after I read the form to him if he wanted to sign.
Q. I assume then he said no?
A. Yes. He did state that he wouldn't.
Q. Did you infer from that he did not want to make a statement?
A. No.
Q. Did you go ahead then and question him?
A. Yes.
Q. Did he make any answer to your questions?
A. Yes."

In *Brown* v. *State* (1971), 256 Ind. 558, 270 N.E.2d 751, a case almost directly on point with the issue here raised, our Supreme Court said:

"According to police testimony appellant was advised of his rights on two different occasions by two different officers and both times appellant refused to sign a waiver of his rights. Since the advisement of rights and the

waiver were read to appellant at the same time we must presume that if appellant understood what his rights were he also understood the meaning of a waiver of those rights. Therefore appellant's refusal to sign the waiver of rights form was an explicit, voluntary and knowing *refusal* to waive his rights.

\* \* \*

. . . After appellant's explicit refusal to waive his right to have an attorney present and to remain silent appellant should not have been questioned any further. *Mims* v. *State* (1970), 255 Ind. 37, 262 N.E.2d 638; *Miranda, supra.* . . ."

In *Brown,* the State argued that although appellant first refused to waive his rights, the fact that he later confessed constituted an implicit waiver of those rights. Justice De-Bruler countered this contention, quoting the following from *Miranda, supra:*

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained."

In reaching its decision in *Brown,* the court cited *United States* v. *Nielson,* (7th Cir. 1968), 392 F. 2d 849, in which it was held:

". . . [T]he defendant's refusal to sign the waiver form, followed by an apparent willingness to allow further questioning, should have alerted the agents that he was assuming seemingly contradictory positions with respect to his submission to interrogation. Instead of accepting the defendant's equivocal invitation, the agents should have inquired further of him before continuing the questioning to determine whether his apparent change of position was the product of intelligence and understanding or of ignorance and confusion. However, no further inquiry took place. In the absence of such an inquiry, we are compelled to conclude that the defendant's negative responses to the questions asked him were not made after a knowing and intelligent waiver of his rights."

In the case at bar, after Millican refused to sign the advisement of rights form, the officers present should have taken further steps to determine whether his willingness to answer questions reflected an intelligent understanding of his rights. The record does not reveal that any such inquiry was made.

We therefore hold that the statements taken from Millican after his refusal to sign the advisement of rights form were improperly accepted by the police officers and also improperly admitted into evidence.

Cause reversed and remanded with instructions to grant appellant a new trial.

Lybrook, J., concurs; Robertson, P.J., concurs in part and dissents in part, with opinion.

### OPINION CONCURRING IN PART
### AND DISSENTING IN PART

ROBERTSON, P. J.—I concur with the majority opinion of my esteemed colleagues in all but one respect which deals with the alleged error of the trial court's ruling on the motion for a change of judge. Even so, my contention is not directed to their application of the law as much as to the underlying philosophy that I view as an ever-widening departure from the language of Rule CR. 12, which says that the ruling on such a motion is subject to our review for the abuse of discretion only.

A combination of facts and factors in this case do not, in my opinion, place the trial court's ruling in the category of discretion abused. To begin with, the case shows a history of being delayed for different reasons at different times. Standing alone this may not be important except to bolster an inference of delay upon the part of the moving party. Secondly, three days before the motion for a change of judge was filed the State and the defendant stipulated that the

questioned doctors' reports were to be submitted to the court in lieu of a mental hearing. It would not be unwarranted to construe such an action as amounting to a waiver, if not actual invited error, on the defendant's part. Additionally, the defendant was to be tried by a jury and not the judge. If prejudice in fact existed there is a high probability that it would be manifested by the court's evidentiary rulings. This would give the reviewing court tangible questions to decide as opposed to a circumspection of an alleged subjective state of mind. In turn, this would enable the appellate court to serve the ends of justice with something more than speculation. Moreover, the record of this case is absolutely devoid of any indication of judicial hostility.

Finally, cases of the ilk of *Beck* v. *State* (1961), 241 Ind. 231, 171 N.E.2d 696, foreclose the possibility of giving a trial judge the benefit of being forthright in conducting the business of his court.

Were it within my power I would hold that under the facts of this case there was no abuse of discretion in the denial of the motion for a change of judge, thereby giving some efficacy to the meaning of a review for abuse of discretion as used in Rule CR. 12, if for no other reason than stemming the erosion of the rule into saying that one is entitled to a change of judge under any circumstances.

NOTE.—Reported at 300 N.E.2d 359.