HERBERT L. WORKS *v*. STATE OF INDIANA.

[No. 775S167. Filed April 28, 1977.]

252

*Joseph D. Bradley,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *John P. Avery,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with commission of a felony (robbery) while armed with a deadly weapon, Ind. Code § 35-12-1-1, robbery, Ind. Code § 35-13-4-6, and automobile banditry, Ind. Code § 35-12-2-1. He was found guilty upon all three counts after a trial by jury and was sentenced to imprisonment for a term of not less than two nor more than five years upon the automobile banditry charge and for a term of twenty years upon the armed felony charge, said sentences to run concurrently. His appeal presents the following issues:

(1) Whether the evidence was sufficient, as a matter of law, to sustain the verdicts.

(2) Whether the trial court erred in denying the defendant's *pro se* motion, filed immediately prior to the commencement of the trial, seeking a continuance for additional time in which to retain private counsel.

(3) Whether the trial court erred in denying the defendant's request that he be permitted to conduct cross-examination of two of the State's witnesses personally, rather than by his counsel.

(4) Whether certain physical evidence had been obtained in violation of the rights against unreasonable searches and seizures.

(5) Whether the court erred in admitting certain evidence over the defendant's objection of irrelevance.

(6) Whether the court erred in admitting certain self-incriminating statements of the defendant, over his objection that they had been obtained in violation of his Fifth Amendment rights.

(7) Whether the court erred in giving the State's tendered instruction No. 8, advising that taking "from the person," as proscribed by the robbery statute, did not require that the article be taken from the actual physical person of another but proscribed, as well, such taking "* * * from the personal presence or personal protection of the victim."

## ISSUE I

Viewing the evidence favorable to the State and inferences reasonably drawn therefrom, it disclosed that the defendant parked an automobile in front of the liquor store and tavern premises owned and operated by Vera Danch, at the time and place alleged in the affidavit. He entered the store, purchased a bottle of wine, inquired as to the closing time and left. He returned about one-half hour later in the same vehicle, reentered the store, displayed a gun to Vera and said "Lady this is a robbery. Give me your money out of the cash register." Vera gave him the money, and he then instructed her to give him the money from her purse. She was unable to get it open, whereupon he took it from her, opened it and removed the currency. He next instructed her to give him the money from a second cash register, which

she did. Thereupon, he ordered her into a lavatory, and as he barricaded the door and left, he told her that he would shoot her if she came out before he left. During such episode, to quote Vera's testimony, "I was scared. * * * I was stunned and scared to death * * *."

After leaving Vera in the lavatory, the defendant left the store and drove away in the automobile, which he wrecked a brief time later while attempting to elude pursuing police who had responded to an electronic alarm activated by Vera.

There can be no question but that the foregoing related circumstances and activity encompassed all of the elements of the crime charged. Apparently, the defendant does not comprehend our role in a sufficiency review, as his entire argument upon this issue is addressed only to the weight of the evidence and the credibility of the witnesses, matters which this Court will not review. *Rosell* v. *State*, (1976) 265 Ind. 173, 352 N.E.2d 750; *Lottie* v. *State*, (1974) 262 Ind. 124, 311 N.E.2d 800; *Brown* v. *State*, (1974) 261 Ind. 619, 308 N.E.2d 699.

When the sufficiency of the evidence is raised as an issue upon appeal, this Court will consider only that evidence of probative value most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. If such evidence and inferences would permit a reasonable trier of fact to find the existence of each element of the crime charged beyond a reasonable doubt, the verdict will not be disturbed. *Baum* v. *State*, (1976) 264 Ind. 421, 345 N.E.2d 831, and cases there cited.

## ISSUE II

On the day prior to the date set for trial, the trial judge received, by mail, a request from the defendant, *pro se*, for a continuance to enable him to employ private counsel. The trial court treated this as a motion and held a hearing thereon on the morning of the trial date and denied the same.

At the hearing, the defendant stated that he now had funds with which to pay a lawyer but that he had no specific lawyer in mind. He expressed no dissatisfaction with his appointed counsel, who had represented him for four and one-half months and was prepared for trial. Rather, the defendant merely expressed a desire to have counsel of his own choice.

> "The services of an attorney appointed by the court may not be forced upon a pauper defendant but if the defendant refuses to be represented by the appointed counsel, he must find some method to employ his own counsel or proceed in *propria persona." State* v. *Irvin; Mogle; McAllister,* (1973) 259 Ind. 610, 291 N.E.2d 70, citing *Schuble* v. *Youngblood,* (1947) 225 Ind. 169, 73 N.E.2d 478.

The defendant at his first arraignment hearing held August 29, 1974, requested the appointment of counsel but then withdrew his request and represented that he would employ his own counsel. Arraignment was continued to September 6th. On that date, the defendant appeared in person and with a certified third year law student and advised the court that private counsel would appear, the specific lawyer being named. Again, arraignment was continued—this time to September 13th. No private counsel had appeared by the 13th, and on that date, with the defendant present in person, the court appointed Anthony Luber as pauper counsel and continued the arraignment to September 19th. No objection was made.

On September 19th, the defendant appeared in person and with Mr. Luber and on arraignment entered a plea of not guilty. On October 7th, the case was set for omnibus hearing and pretrial conference on October 29th and for a trial on January 15, 1975. On October 29th a motion for bond reduction was filed, and it was scheduled for hearing on October 30th.

Upon the foregoing record, there was no error in denying the motion for a continuance. The defendant argues that he

had a right under State and Federal Constitutions to have an attorney of his choice if he was financially able to employ one, citing *State* v. *Minton*, (1955) 234 Ind. 578, 130 N.E.2d 226 and *Powell* v. *Alabama*, (1932) 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527. We agree, in principle. However, the right can only embrace a reasonable opportunity to obtain such representation, and we find no denial of such opportunity. Trial was imminent; the defendant had had prior continuances for such purpose, and the trial date had been determined three months earlier. Appointed counsel was prepared and ready. There was no claim of any lack of opportunity, other than his incarceration and prior lack of funds, the latter obstacle having suddenly been miraculously overcome.

The granting of a continuance upon grounds other than the statutory ones (Ind. Code § 35-1-26-1) was within the sound discretion of the trial court. Ind. R. Tr. P. 53.4; *Carlin* v. *State*, (1970) 254 Ind. 332, 259 N.E.2d 870; *Calvert* v. *State*, (1968) 251 Ind. 119, 239 N.E.2d 697; *Ward* v. *State*, (1965) 246 Ind. 374, 205 N.E.2d 148. The exercise of such discretion may be disturbed by a reviewing court only for clear error, which has not been here shown.

## ISSUE III

During the course of the State's case in chief, the defendant requested that he, personally, be permitted to cross examine two of the State's witnesses. The request was denied. In *Adams* v. *State*, (1974) 262 Ind. 220, 314 N.E.2d 53, the defendant requested permission to make the final argument to the jury. This Court quoted from *United States* v. *Catino*, (2nd Cir. 1968) 403 F.2d 491:

"The right of a defendant in a criminal case to act as his own lawyer is unqualified if evoked prior to the start of the trial * * * Once the trial has begun with the defendant represented by counsel, however, his right thereafter to discharge his lawyer and to represent himself is sharply

curtailed. *There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of the balance."* (Emphasis added).

The decision to allow a criminal defendant to proceed without counsel after trial has begun is also within the sound discretion of the trial court. This involves a question of fact and the defendant bears the burden of establishing the existence of prejudice to his legitimate interests. *Hester* v. *State,* (1974) 262 Ind. 284, 315 N.E.2d 351; *Turner* v. *State,* (1972) 259 Ind. 344, 287 N.E.2d 339; *Hitch* v. *State,* (1972) 259 Ind. 1, 284 N.E.2d 783. Here the defendant failed to carry that burden. Specifically, he made no showing or claim giving rise to a reasonable expectancy that he could elicit any evidence from the witness which his attorney could not.

There is another justification for the trial judge's denial of the defendant's request. Both witnesses whom he sought to cross examine had already been cross examined by his attorney. It is the court's duty to protect witnesses against needless interrogation and harassment. In so doing, the court has a right to require that a witness be cross examined by but one attorney, and rarely is such procedure varied. This is in accord with ancient tradition. Busch Law and Tactics in Jury Trials, Encyclopedic Edition, Volume Three, p. 502.

## ISSUE IV

The defendant contends that certain physical evidence removed from his person and from the automobile which he operated during the commission of the crimes was improperly admitted into evidence over his objection. This claim is based upon the exclusionary rule of *Mapp* v. *Ohio,* (1961) 367 US 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *Crowe* v. *State,* (1969) 251 Ind. 562, 243 N.E.2d 759; *Brooks* v. *State,* (1967) 249 Ind. 291, 231 N.E.2d 816,

As previously mentioned, the robbery victim activated an electronic alarm system while the robbery was in progress. It alerted the South Bend, Indiana Police. As one police officer arrived to investigate, he noticed an unlighted automobile moving slowly away from in front of the store. The officer followed in his patrol car. Another police officer in another patrol car attempted to block the path of the defendant, but he drove his vehicle up onto the curb and escaped. The pursuing police officers finally captured the defendant after a high speed chase which ended in his automobile colliding with a tree. The defendant was physically apprehended as he crouched on the ground next to the open passenger door of the wrecked vehicle. A paper sack containing coins, a revolver, and other items of evidence was found on the front seat of the automobile, and currency was found on the defendant's person.

It is conceded by the defendant that this search falls under an exception to the warrant requirement as being incidental to his arrest, but he maintains that the police lacked a probable cause to arrest and that the warrantless seizure of evidence incidental to an invalid arrest violates the Fourth Amendment to the Constitution of the United States and Article I, Section 4 of the Constitution of the State of Indiana.

Although a police officer may not arrest for a misdemeanor without a warrant, unless the misdemeanor was committed within his view, *Hart* v. *State*, (1924) 195 Ind. 384, 145 N.E. 492, he may arrest for a felony without a warrant, if he has reasonable and probable cause to believe that a felony is being, or has been, committed by the subject of the arrest. *Wagner* v. *State*, (1968) 249 Ind. 457, 233 N.E.2d 236; *Stearsman; Peak; Carter* v. *State*, (1957) 237 Ind. 149, 143 N.E.2d 81; *Snow* v. *State*, (1955) 234 Ind. 234, 125 N.E.2d 802.

The defendant argues that the police did not have sufficient cause to believe that there had been a felony committed at the

time the first mentioned officer began to follow the automobile as it was driven away from the victimized store or when he and the second officer made their first attempt to stop it. The question is, however, whether the arresting officer had sufficient cause, at the time of the arrest, to believe that the defendant had, committed a felony. An arrest occurs when a person is placed under actual restraint, Ind. Code § 35-1-19-1, which, in this case, was when the police apprehended the defendant as he crouched beside the wrecked vehicle. At that time, the police knew that a robbery had been committed and had probable cause to believe that the defendant was the perpetrator. Since the arrest was lawful, the evidence obtained as an incidence thereof was properly admitted.

### ISSUE V

The evidence seized as a result of the search of the defendant's person and of the motor vehicle consisted of a revolver, ammunition, a bag of coins, the hat, a stocking, and currency. The defendant maintains that the admission of these items was erroneous because they had not been positively identified by the victim and were not relevant.

Relevance is the logical tendency of evidence to prove a material fact. *Walker* v. *State*, (1976) 265 Ind. 8, 349 N.E.2d 161. Evidence which legitimately tends to connect the defendant with the crime charged is admissible over a claim of irrelevance. *Austin* v. *State*, (1974) 262 Ind. 529, 319 N.E.2d 130, *cert. denied*, 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680; *Graham* v. *State*, (1970) 253 Ind. 525, 255 N.E.2d 652. But, the connection need not be absolute or unequivocal. "Any fact or circumstance that tends to render a claimed fact more or less probable is relevant to show whether the claimed fact exists or not." *Vorhis* v. *State*, (1953) 233 Ind. 105, 116 N.E.2d 233, 234; Also see *Pirtle* v. *State*, (1975) 263 Ind. 16, 323 N.E.2d 634; *Austin* v. *State*, *supra*.

The officer who arrested the defendant testified that the evidence in question had been removed from the defendant's

person or recovered from the area which was under his control at the time of his arrest. This provided a sufficient link between the defendant and the evidence. The victim of the robbery had testified that the robber wore a hat similar to the one found, that the robber had raised his shirt to display a pistol stuck in his trousers and that he removed money in a paper sack of the type customarily used to package bottles of liquor. A reasonable juror could legitimately infer from such testimony that the items of evidence linked the defendant to the crime charged.

The nylon stocking, with holes cut out and having the appearance of a mask was the only piece of evidence not directly or circumstantially related to the crime of which the defendant was convicted. Although the robber had worn no mask, the admission of this evidence was, nevertheless, not error, because it was indicative of a capability of concealing his identity, a factor which permitted a legitimate inference that he had contemplated a robbery. Further, in view of the other overwhelming evidence of the defendant's guilt, it is unreasonable to believe that this bit of evidence had significant impact upon the jury.

## ISSUE VI

Immediately after the defendant was placed under arrest, the arresting officer warned the defendant of his constitutional rights by reading aloud a printed list of so-called "Miranda" warnings, which included advising him of his right to remain silent. To this the defendant expressly replied that he understood what his rights were but that he had nothing to say. At this point the defendant offered some resistance, whereupon, the two police officers present threw him to the ground in order to conduct a search of his person and to restrain him with handcuffs. As the defendant was thus forcibly restrained, he uttered the incriminating statement, "The gun is in the car and all I want is to go to jail." The arresting officer's testimony concerning this statement was admitted into evidence at trial over the defendant's objection.

A few hours after his arrest, and while in police custody, the defendant requested that he be permitted to talk to someone. He contends that he was merely seeking medical attention for numbness in his hands and wrists which allegedly was produced by the tight handcuffs. A detective was summoned, however, and the defendant was removed from his cell to an interrogation room where he was again informed of his constitutional rights and refused to sign a written waiver thereof. Nevertheless, and prior to any interrogation, he spontaneously volunteered incriminating information, saying that he had not wanted to do it, inquiring as to how the victim was and remarking that she had seemed nervous. Following the making of such spontaneous remarks, the police detective proceeded to ask the defendant questions, and he answered them. Evidence of the volunteered statement was admitted over objection, but evidence obtained from the interrogation was excluded.

Some seven or eight hours after the defendant's arrest, he was again removed from his cell, taken to an interrogation room and again advised of his constitutional rights. On this occasion, the defendant indicated that he understood his rights, signed a written waiver thereof, submitted to interrogation and answered questions.

The defendant objected to the admissibility of each of the aforementioned statements upon the grounds that they had been "obtained in violation of his rights against self-incrimination and his right to counsel." He has lumped the three occasions together and asserts that the statements made were inadmissible under *Mims* v. *State*, (1970) 255 Ind. 37, 262 N.E.2d 638, *Brown* v. *State*, (1971) 256 Ind. 558, 270 N.E.2d 751 and *Millican* v. *State*, (1973) 157 Ind. App. 363, 300 N.E.2d 359. We consider the briefing upon this issue to be inadequate under the requirements of Ind. R. Ap. P. 8.3(A)(7) which requires:

"* * * The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations

to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review."

Nevertheless, we shall treat the issue to the extent necessary to assure that no substantial right of the defendant has been overlooked or violated.

The defendant makes no contention that he had not been given the warnings required under *Miranda* v. *Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, rather, it is his position that he should not have been questioned following his first refusal to waive his rights and that the State had failed to carry its burden of proving that he had knowingly and intelligently waived his rights.

With regard to the statements made on the occasion of his arrest and the ones first made at the jail, we note the statements were not the product of interrogation but [11] were volunteered. Interrogation did follow such statements made at the jail, but they were not admitted, and we need not be concerned with them. Although the defendant indicated in one breath that he desired to remain silent, in the next breath he volunteered the inculpatory information. There having been no interrogation, the presumption of involuntariness that arose under *Miranda* did not arise. Rather, the admissibility of the statements is to be controlled by determining, from the totality of the circumstances, whether or not they were made voluntarily. *Ortiz* v. *State,* (1976) 265 Ind. 549, 356 N.E.2d 1188.

In *Johnson* v. *State,* (1968) 250 Ind. 283, 235 N.E.2d 688, this Court articulated the standard for determining voluntariness as follows:

"* * * whether under all the attendant circumstances, the confession was free and voluntary, freely self-determined, the product of a rational intellect and a free will, and without compulsion or inducement of any sort, or whether the accused's will was overborne at the time he confessed."

Although the State was required to prove the voluntariness of the defendant's statements beyond a reasonable doubt, we review the question upon appeal as we do other sufficiency matters, i.e. to determine whether there was substantial probative evidence to support the trial court's finding. We do not weigh the evidence. *Ortiz* v. *State, supra.*

We have been presented with no circumstances indicating any unusual or coercive action by the police which logically would have misled the defendant or overborne his will with regard to the statements under consideration and previously referred to as volunteered. The State's burden was fulfilled when evidence was produced from which the trial court could have found beyond a reasonable doubt that the police conduct was not excessive, unnecesary or unreasonable.

Turning to the occasion when the police interrogated the defendant the second time, such re-initiation of interrogation following the defendant's election to remain silent may have been improper, notwithstanding the reiteration to the defendant of his constitutional rights. The defendant has not related to us the circumstances surrounding this interrogation but seeks, upon the authority of *Mims* v. *State, supra, Brown* v. *State, supra* and *Millican* v. *State, supra,* to have a rule of *per se* inadmissibility invoked. We do not view these cases as going that far, and the contrary was held in *Michigan* v. *Mosley,* (1975) 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313. Although there are circumstances present that are very unfavorable to a finding of a voluntary waiver, the determination thereof must be made from the totality of the circumstances, and we have not been exposed to that totality. Consequently, we can make no judgment upon that basis.

Assuming the incorrectness of the trial court's ruling admitting the last mentioned evidence, however, we could not reverse for such error, because the evidence that came into the record thereunder was not decisive of guilt but was merely cumulative. *Koonce* v. *State,*

(1975) 263 Ind. 5, 323 N.E.2d 219; *Chatman* v. *State*, (1975) 263 Ind. 531, 334 N.E.2d 673.

## ISSUE VII

The State's tendered instruction No. 8 was as follows:

"One of the elements of the crime of robbery is that an article of value be taken 'from the person' of another. This does not mean that the article must be taken from the actual, physical person of another, however. For the purpose of this offense, 'from the person' may include an article taken from the personal presence or personal protection of the victim."

The defendant objected to the above instruction upon the basis that it attempted to dictate to the jury the prima facie evidence which would establish an ultimate fact, in violation of Article I, Section 19, Constitution of Indiana. We see no error in such instruction and regard it as being but definitive of the statutory words taking "from the person". It was an accurate formulation of the law as expressed in *Smith* v. *State*, (1969) 252 Ind. 148, 153, 246 N.E.2d 765. We see no invasion of the province of the jury to determine the facts from the evidence.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J. and Arterburn and Hunter, JJ., concur; De-Bruler, J., dissents with opinion.

## DISSENTING OPINION

DeBruler, J.—Officer Szymczak arrested appellant a few moments after appellant's car crashed into the tree. He placed a handcuff on one of appellant's wrists. Officer Szymczak immediately told him he was under arrest, he had a right to remain silent, he had a right to an attorney, and if he could not afford one, one would be appointed for him. Appellant said nothing in response to this advisement. Officer Szymczak turned appellant over to Officer Miller to finish handcuffing

and for transporting. As Miller took hold of him, appellant began crying. Miller then read him an advisement of rights, word for word, from a card which had been supplied him by the Academy. That card reads:

"Before we ask you any questions, you must understand your rights and also understand the rights as follows: You have the right to remain silent. Anything you say can be used against you in Court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning, if you wish. If you decide to answer questions without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

After having heard this advisement, appellant, while still crying, and without verbal response, resisted having his other hand cuffed, and was flipped onto the ground and onto his stomach where the cuffing was completed. While so situated on the ground, Officer Miller started patting him down and searching his person; and then while still crying and while being so searched upon the ground, the appellant yelled out, "The gun is in the front seat and I just want to go to jail."

This statement should have been suppressed on motion of appellant as the State failed to show beyond a reasonable doubt that it was voluntarily made. *Nacoff* v. *State*, (1971) 256 Ind. 97, 267 N.E.2d 165; *Burton* v. *State*, (1973) 260 Ind. 94, 292 N.E.2d 790. The circumstances under which it was made indicate that appellant made no free and voluntary choice to speak. The advisement received by appellant moments before the statement commences with the words "Before we ask you any questions. . . ." and later calls upon appellant to make an immediate decision as to whether he wants to give the police information. These phrases in this advisement inform the person to whom they are directed that the first step in a police process aimed at getting information is now taking place. The advisement was followed immediately by further forcible restraint and a search of appellant. While this physical force was reasonable and legitimate as a means of taking custody

of appellant, its influence was nevertheless upon the appellant as he cried out. And as appellant shouted, Officer Miller was searching his person for something. While it is only necessary for this Court to conclude that the State failed in its burden to show the statement was made voluntarily to find error here, we could reasonably go so far here as to conclude that the only reasonable inference from the evidence was that appellant made this statement in order to give the police what he thought they were after, and in order to extricate himself from the conditions there at the scene.

After this episode at the scene, appellant was transported to the jail by Officer Miller. En route Officer Miller again read a *Miranda* advisement to him, and this time appellant responded that he had nothing to say. It is this exercise by him of the right to remain silent that casts the heavy burden upon the State to show beyond a reasonable doubt that before giving the two later station house statements, appellant voluntarily and intelligently relinquished his right to remain silent. *Brown* v. *State,* (1971) 256 Ind. 558, 270 N.E.2d 751; *Magley* v. *State,* (1976) 263 Ind. 618, 335 N.E.2d 811. After several hours at the police station appellant summoned an officer. He was then taken to an interrogation room, read an advisement of rights, but refused to sign a waiver. He then gave the first station house statement. In refusing to sign the waiver and in indicating a willingness to speak, appellant was taking contradictory positions. Under such circumstances the police should have made further inquiry to determine whether appellant's decision to relinquish the right to remain silent was being made out of ignorance and confusion. *Brown* v. *State, supra; State* v. *Jones,* (1974) 37 Ohio St. 2d 21, 306 N.E.2d 409. Without such an inquiry, no conclusion could reasonably be reached that appellant had intelligently and voluntarily relinquished the right to remain silent. The trial court erred in refusing to suppress this first station house statement. And as for the second station house statement, it too was erroneously admitted over objection since appellant's decision to sign a written waiver of the right to

remain silent and right to counsel was the product of and was tainted by the precedent unlawful interrogation in which appellant made seriously incriminating statements. *Westover v. U.S.,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Ashby; Corley* v. *State,* (1976) 265 Ind. 316, 354 N.E.2d 192.

I vote to reverse this conviction and order a new trial.

NOTE.—Reported at 362 N.E.2d 144.