**Mary Inez WINEGAR, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

No. 2–183A16.

Court of Appeals of Indiana, Second District.

Oct. 26, 1983.

Charles M. Crouse, Jr., Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Mary Inez Winegar (Winegar) appeals her jury convictions of theft[1] and attempted theft,[2] claiming trial court error in allowing testimony concerning an oral statement and in allowing cross-examination concerning her prior criminal record.

We affirm.

## FACTS

The facts most favorable to the State indicate that on July 3, 1982, Officer Copeland (Copeland) of the Anderson Police Department was patrolling the Mounds Mall, a shopping center in Anderson, Indiana. Copeland saw Winegar in her car and decided to follow her into the shopping center because he was aware of her record for shoplifting.

Upon entering the Woolworth store, Winegar selected a poster board from a display. Then Winegar went to the toy department, where Copeland saw her remove a small toy from its box, put the empty box back on the shelf, and place the toy in her purse. As she left the store, Winegar paid for the poster board but not for the concealed toy. Winegar's next stop was the Meis store. Copeland watched Winegar slip a package of draperies into the Woolworth sack. As she headed for the front of the store, Winegar, apparently recognizing Copeland, returned to the draperies department and threw an item from her sack back on the shelf.

When Winegar left the Meis store, Copeland asked her to accompany him to the security room. Copeland, with Detective Gilbert Hall as a witness, verbally informed Winegar of her rights, after which Winegar signed a waiver-of-rights form. A search of her purse revealed a Daredevil Skydiver toy, and a matching empty box was found still on the shelves of Woolworth's toy department. Inside Winegar's Woolworth sack was the poster board she had purchased, and Copeland discovered draperies lying on the shelf of the Meis store where she had thrown an item from her sack after recognizing him.

---

1. Ind.Code 35–43–4–2 (1982).

2. IC 35–43–4–2; –41–5–1 (1982).

Winegar's first response to questions concerning where she had gotten the items was a denial of any wrongdoing, accompanied by a claim that she had purchased the toy for her grandson at a rummage sale. Later, Winegar stated, "I might as well tell you anyway, you're going to put me in jail." *Record* at 98, 119. Copeland interviewed Winegar for approximately twenty minutes, after which she refused to give a written statement. A jury trial resulted in Winegar's convictions of one count of theft and one count of attempted theft, from which she now appeals.

### ISSUES

Winegar presents two issues for our consideration:

1. Did the trial court err in determining that an oral statement made by Winegar at the time of her arrest was admissible because it was preceded by a proper advisement of constitutional rights and was knowingly and voluntarily given?

2. Did the trial court err in allowing Winegar to be cross-examined as to her prior criminal record based on a determination that the probative value of this evidence outweighed any prejudicial impact?

### DECISION

ISSUE ONE—Did the trial court err in determining that an oral statement made by Winegar at the time of her arrest was admissible because it was preceded by a proper advisement of constitutional rights and was knowingly and voluntarily given?

PARTIES' CONTENTIONS—Winegar suggests that the trial court erred in failing to suppress evidence of her oral statement because she was not properly advised of her constitutional right to an attorney and because her statement was not knowingly and voluntarily made, as shown by her later refusal to make a written statement. The State responds that Winegar was adequately informed of her rights, as evidenced by a signed waiver-of-rights form, and the evidence sufficiently supports the conclusion

that her statement was knowingly and voluntarily given.

CONCLUSION—The trial court correctly decided that, as a result of its being knowingly and voluntarily made and preceded by an accurate advisement of rights, Winegar's oral statement was admissible.

■ Any statement made during interrogation is not admissible unless Winegar was advised of her constitutional rights, including the right to an attorney during interrogation. *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Our supreme court has emphasized that, while it is not sufficient to merely inform a suspect of her right to an attorney at some unspecified time, *Franklin v. State,* (1974) 262 Ind. 261, 314 N.E.2d 742, it is not necessary to use the exact language of *Miranda, supra.* In *Burton v. State,* (1973) 260 Ind. 94, 102, 292 N.E.2d 790, 796 (emphasis supplied), a pre-interrogation notice that the defendant had "a right to have a lawyer present *now*" and that "he had a right to have an attorney *at that time or at any time*" was sufficient. Likewise, stating that the defendant is "entitled to legal counsel *present at all times*" has been upheld as an ample advisement of the defendant's right to counsel before interrogation. *Solomon v. State,* (1982) Ind., 439 N.E.2d 570, 575 (emphasis supplied). Winegar signed a waiver-of-rights card, after being orally informed of these same rights, which stated, "I, the undersigned, have been informed as to my constitutional rights, that I am entitled to legal counsel *present at all times*[.] I have also been advised that if I am unable to pay for counsel that the court will appoint an attorney to represent me. . . ." *Record* at 95–99, 113–14. This printed statement adequately advised Winegar of her constitutional right to an attorney during questioning.

■ To be admissible, a statement must also have been knowingly and voluntarily given, viewing the totality of the circumstances. The State must prove beyond a reasonable doubt that the statement did not result from improper influences

which overcame the free will of the accused. We then review the trial court's decision to deny the motion to suppress as we do all sufficiency matters, focusing on whether there is sufficient evidence of probative value to support the denial. In doing so, we will not reweigh the evidence or judge the credibility of witnesses. *Grassmyer v. State,* (1981) Ind., 429 N.E.2d 248; *Long v. State,* (1981) Ind., 422 N.E.2d 284.

Winegar was apprehended as she left the Mounds Mall and was immediately escorted to a security room. Copeland, with Detective Gilbert Hall as a witness, advised Winegar of her rights, and she signed a waiver-of-rights form. Initially, Winegar denied the allegation of shoplifting, but when Copeland told her he did not believe her because he had been watching her, Winegar stated "I might as well tell you anyway, you're going to put me in jail." *Record* at 98, 119. Winegar refused to give a written statement, so the twenty-minute interrogation ended and no further discussions occurred before Winegar was escorted to the Anderson police station. *Record* at 94–100, 113–14, 118–20.

■ The trial court denied Winegar's motion to suppress her oral statement, but Winegar proffers her refusal to give a written statement as evidence of the involuntariness of her earlier oral statement. In support of this notion, Winegar points to *Millican v. State,* (1973) 157 Ind.App. 363, 300 N.E.2d 359, in which a defendant's statement was inadmissible because it resulted from interrogation after a refusal to sign the waiver-of-rights card. Winegar made her statement after signing the waiver-of-rights form; therefore, *Millican* is not applicable. Viewing the totality of the circumstances surrounding her statement, we find no error in admitting the statement as it was knowingly and voluntarily given. *See Bumgardner v. State,* (1981) Ind., 422 N.E.2d 1244.

ISSUE TWO—Did the trial court err in allowing Winegar to be cross-examined as to her prior criminal record based on a determination that the probative value of this evidence outweighed any prejudicial impact?

PARTIES' CONTENTIONS—Winegar submits that her prior convictions were not proper means of impeachment and, even if they were, the prejudicial effect of this evidence far outweighed any probative value. The State counters that use of Winegar's prior convictions as an impeachment tool was permissible and the probative value overpowered any prejudicial consequences.

CONCLUSION—The trial court did not err in permitting Winegar to be impeached by her criminal record because the probative value outweighed any prejudicial impact.

■ In Indiana, a witness may only be impeached by prior crimes which either render a witness incompetent or reflect on the credibility of a witness by involving dishonesty or false statement. *Ashton v. Anderson,* (1972) 258 Ind. 51, 279 N.E.2d 210. During cross-examination, Winegar was impeached by evidence of her convictions of four counts of criminal conversion in 1981 (involving shoplifting incidents), one count of theft in 1981 (involving receipt of improper refunds), and one count of check deception in 1982. *Record* at 226–28.

■ The Indiana Supreme Court has previously determined that theft is a crime of dishonesty or false statement. *Fletcher v. State,* (1976) 264 Ind. 132, 340 N.E.2d 771. Thus, a prior theft conviction may be admissible for impeachment purposes. In *Burkes v. State,* (1983) Ind., 445 N.E.2d 983, it was decided that proof of a prior conviction for a lesser included offense of theft may also become admissible impeachment evidence in cross-examination. Hence, criminal conversion, being a lesser included offense of theft, *Wells v. State,* (1982) Ind., 441 N.E.2d 1366, falls within the court's definition of a crime of dishonesty or false statement as well.

■ This leaves us with a question that has not been answered in this state, i.e., whether check deception is a crime of dishonesty or false statement. Check deception is defined as follows:

"(a) *A person who knowingly or intentionally issues or delivers a check,* draft, or order on a credit institution for the payment of or to acquire money or other property, *knowing that it will not be paid or honored by the credit institution upon presentment* in the usual course of business, commits check deception, a Class A misdemeanor."

IC 35–43–5–5 (1982) (emphasis supplied). Proof of the elements of check deception would seem to be indicative of dishonesty. When the accused presents a check, knowing it will be dishonored, the validity of the check has been misrepresented. In so doing, the accused has engaged in "deception", conduct which has "a tendency to reflect on the individual's credibility for truth and veracity". *Ashton, supra* at 61, 279 N.E.2d at 216. Accordingly, proof of Winegar's conviction of check deception could be used to impeach her. *See also McDaniel v. State,* (1978) 268 Ind. 380, 375 N.E.2d 228 ("theft by check" is a crime of dishonesty).

Our analysis does not stop here, however. *Fletcher, supra,* outlines a procedure which may be utilized to show that the crime, as committed, did not indicate a lack of veracity on the part of the witness. This procedure entails seeking a pre-trial motion in limine for exclusion of any reference to the prior convictions. *Fletcher, supra* at 137, 340 N.E.2d at 775. Winegar did not avail herself of this procedure, but rather relied on an objection at trial based on the prejudicial effect of the evidence. *Record* at 222–24. The trial court allowed admission of the evidence not only because of a determination that the crimes revealed Winegar's propensity as to false statement, but also because the defense had already informed the jury during voir dire that the defendant had prior convictions. *Record* at 225–26. Under the facts presented, we agree with the trial court that Winegar was not unduly prejudiced by admission of her criminal record. *See Burkes, supra.*

Judgment affirmed.

SULLIVAN, J., concurs.

SHIELDS, J., concurs.